NEW YORK AIRLINES, INC., Plaintiff,

v.

DUKES COUNTY, Martha's Vineyard Airport Commission, et al., Defendants.

Civ. A. No. 85–2342–W.

United States District Court, D. Massachusetts.

Dec. 4, 1985.

original opinion.

Thayer Fremont-Smith, Choate, Hall & Stewart, Boston, Mass., Ronald Stern, Hughes, Hubbard & Reed, Washington, D.C., for plaintiff.

Robert Tolins, Holtz & Gilman, P.C., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff in this action is New York Airlines, Inc. ("New York Air"). Defendants are Dukes County, the Martha's Vineyard Airport Commission (the "Commission") and the individual members of the Commission. New York Air seeks damages and injunctive relief for the refusal by the Commission to grant it access to the Martha's Vineyard Airport (the "Airport"). The matter is before the court on defendants' motion to dismiss the complaint under Fed. R.Civ.P. 12(b)(1) and 12(b)(6).

For the reasons set forth below, the motion is in part granted and in part denied. More specifically, defendants' motion is granted as to New York Air's claims under 49 U.S.C. §§ 1305(a) and 1349(a) and under 42 U.S.C. § 1983 to the extent they are based on those provisions of the federal aviation statutes. The motion is denied as to New York Air's claims under the supremacy clause of the Constitution, art. VI, cl. 2; the commerce clause, U.S. Const., art. I, sec. 8, cl. 3; 42 U.S.C. § 1983 to the extent they are based upon 49 U.S.C. § 2210(a); and the Sherman Act, 15 U.S.C. § 1 et seq.

The alleged facts, as stated in the amended complaint, are as follows. On April 9, 1985, New York Air filed a formal request for permission to operate at the Airport beginning on June 1, 1985. The request was considered at a meeting of the Commission held on April 24, 1985, at which the Commission refused New York Air permission to use the terminal and ramp facilities at the Airport. This, in effect, denied New York Air access to Martha's Vineyard. According to statements made at the April 24 meeting by members of the Commission, the refusal was based in part on factors that relate to New York Air's proposed routes and services, including concern over the competition that would result with Provincetown-Boston Airways ("PBA"), a carrier which now services the Airport, and the opinion of some members that the proposed service was unnecessary since other carriers, including PBA and Brockway Air, already provided adequate service. Commission members also stated that the Airport's facilities were inadequate to accommodate New York Air's DC 9–30 aircraft. The decision to deny New York Air access to the Airport was confirmed on May 8, 1985. The amended complaint further alleges that defendants' actions constitute an attempt to regulate the routes and services of an air carrier seeking to use the Airport and that, even if the denial of access was based on purported facilities limitations at the Airport, the denial was improper because the facilities are adequate to accommodate the proposed operations.

New York Air's claims for relief are based on the supremacy clause of the United States Constitution, art. VI, cl. 2; the commerce clause of the Constitution, art. I, sec. 8, cl. 3; the civil rights statute, 42 U.S.C. § 1983; and various provisions of the federal aviation laws, 49 U.S.C. §§ 1305(a), 1349(a) and 2210(a).[1] New York Air also alleges that defendants conspired with PBA to protect PBA from com-

---

**1.** New York Air also brings claims under 49 U.S.C. § 1718(a), the predecessor to 49 U.S.C. § 2210(a). The earlier provision, 49 U.S.C. § 1718(a), was repealed by the Airport and Air-

petition in violation of the antitrust laws, 15 U.S.C. § 1.

For purposes of a motion to dismiss for failure to state a claim, the material allegations of the complaint are to be taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404, *rehearing denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *O'Brien v. Di-Grazia,* 544 F.2d 543, 545 (1st Cir.1976), *cert. denied sub nom. O'Brien v. Jordan,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *see Robinson v. Stanley Home Products Inc.,* 272 F.2d 601, 602 (1st Cir. 1959). The complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. at 421, 89 S.Ct. at 1848; *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102.

## I. *The Constitutional Claims*

### A. The Supremacy Clause

■ The supremacy clause, U.S. Const., art. VI, cl. 2, invalidates state laws that "interfere with or are contrary to" federal law. *Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824). Congress may prempt state law by an express provision. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, *reh'g denied,* 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977). In addition, an intent to preempt state law may be inferred where Congress has enacted a sufficiently comprehensive scheme of federal regulation or where the federal interest is dominant so as to preclude state legislation in the same area. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *see Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Where Congress

has not acted to supersede completely regulation by the states, state law is nullified to the extent that it conflicts with federal law. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 141–43, 83 S.Ct. 1210, 1216–18, 10 L.Ed.2d 248, *reh'g denied,* 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963). *See generally Hillsborough County v. Automated Medical Laboratories, Inc.,* —— U.S. ——, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). New York Air claims that the Commission's action is prohibited under the supremacy clause by the express preemption provision contained in 49 U.S.C. § 1305(a) and by inference from the extensive federal regulatory scheme governing interstate air transportation and the federal policies underlying that scheme.

■ Section 105(a) of the Federal Aviation Act, 49 U.S.C. § 1305(a), provides that:

[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under title IV of this Act to provide air transportation.

The provision was enacted as part of the Airline Deregulation Act of 1978, Pub.L. No. 95–504, 92 Stat. 1705, 1708 (1978) (amended 1984), by which Congress sought to place "maximum reliance on competitive market forces and on actual and potential competition," consistent with the public safety and other objectives of the Act, for the provision of a national air transportation system. 49 U.S.C. § 1302(a)(4). Section 105(a) addressed the absence under existing law of any specific provision governing federal and state jurisdiction and was intended to "prevent conflicts and inconsistent regulations" affecting airlines providing both intrastate and interstate service. H.R.Rep. No. 95–1211, 95th Cong., 2d. Sess., *reprinted in* 1978 U.S.

way Improvement Act of 1982, Pub.L. 97–248, § 523(a) 96 Stat. 671, 695 (1982).

Code Cong. & Ad.News 3737, 3752. Section 105(a) expressly preempts state regulation of interstate carriers operating pursuant to 49 U.S.C. § 1371 *et seq. See, e.g., San Diego Unified Port District v. Gianturco*, 651 F.2d 1306, 1310 n. 8, (9th Cir. 1981), *cert. denied sub nom. Department of Transportation v. San Diego Unified Port District*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *see also Midway Airlines, Inc. v. County of Westchester, N.Y.*, 584 F.Supp. 436, 440 n. 18 (S.D. N.Y.1984). New York Air's amended complaint therefore states a claim under the supremacy clause to the extent that the Commission's action is alleged to constitute a "law, rule, regulation, standard, or other provision" affecting its "rates, routes, or services." *See* 49 U.S.C. § 1305(a).

In addition, courts have recognized the predominance of federal interests in the regulation of aviation. *See, e.g., City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 625, 633–34, 93 S.Ct. 1854, 1855, 1859–60, 36 L.Ed.2d 547 (1973) (federal regulation of aircraft noise); *United States v. Helsley*, 615 F.2d 784, 786 (9th Cir.1979); *British Airways Board v. Port Authority of New York & New Jersey*, 564 F.2d 1002, 1010 (2d Cir.1977) (*"Concorde II"*). The amended complaint thus states a claim under the supremacy clause insofar as the Commission's action would interfere with the federal scheme of regulation or stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. at 67, 61 S.Ct. at 404.

Challenges to the actions of airport operators based on the supremacy clause, including private actions against refusals by local airport proprietors to grant access to interstate carriers, have been recognized by the courts. *Concorde II; United States v. State of New York*, 552 F.Supp. 255 (N.D.N.Y.1982), *aff'd*, 708 F.2d 92 (2d Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); *see Midway Airlines*, 584 F.Supp. at 438; *see also Pirolo v. City of Clearwater*, 711 F.2d 1006, *reh'g denied*, 720 F.2d 688 (11th Cir. 1983) (suit brought by airport operator under supremacy clause); *San Diego Unified Port District*, 651 F.2d 1306 (suit by local port district).[2]

■ Defendants' contention that the refusal of access to New York Air was temporary and that it was based on legitimate proprietary interests excluded from preemption under section 105(b) of the Federal Aviation Act, 49 U.S.C. § 1305(b), cannot properly be considered on the motion to dismiss.[3] These issues will necessarily involve factual determinations and no evidence has been presented by the parties as to matters outside the pleadings. *See* Fed.R.Civ. 12(b). The amended complaint states facts in support of the allegations that the Commission's action was based on factors related to the rates, routes and services of New York Air and was beyond the scope of legitimate local concerns. Specifically, New York Air alleges that the Commission's denial of access was based on consideration of the

---

**2.** The supremacy clause has been broadly construed to apply to various forms of state action. It applies to the acts of "any subordinate instrumentality of the State exercising delegated legislative authority," including "an order of a commission." *Standard Computing Scale Co. v. Farrell*, 249 U.S. 571, 577, 39 S.Ct. 380, 382, 63 L.Ed. 780 (1919). *See also United States v. State of California, State Water Resources Board*, 694 F.2d 1171 (9th Cir.1982) (conditions imposed by state board on federal project not prempted by supremacy clause). *Handsome v. Rutgers University, State University of New Jersey*, 445 F.Supp. 1362 (D.N.J.1978) (policy of state university held to implicate supremacy clause).

**3.** The conduct of airport operators, as proprietors, is not immune to challenge under the supremacy clause, as defendants contend. Whether specific acts are within the authority reserved by 49 U.S.C. § 1305(b) requires consideration of facts. Courts have scrutinized the actions of airport proprietors to determine whether they are prempted by federal law. *Global Int'l Airways Corp. v. Port Authority of New York & New Jersey*, 727 F.2d 246, *reh'g denied*, 731 F.2d 127 (2d Cir.1984); *Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100 (9th Cir. 1981); *Concorde II*, 564 F.2d at 1010–12.

adequacy of existing service at the airport and the potential effect of New York Air's proposed service on competition with other carriers. These factors relate to the routes and services of interstate air carriers. In light of the applicable standards, these allegations are sufficient to state a claim under the supremacy clause.

### B. The Commerce Clause

Under the commerce clause, state or local regulation affecting interstate commerce which serves to promote a legitimate local interest is permissible "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits". *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Where state regulation does impose excessively on "aspects of trade [which] must remain free from interference by the States," the clause of its own force may serve to invalidate the state regulatory activity. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 669, 101 S.Ct. 1309, 1315, 67 L.Ed.2d 580 (1981) (plurality opinion); *see also British Airways Board v. Port Authority of New York*, 558 F.2d 75, 85 n. 3 (2d Cir.1977) ("*Concorde I*").

■ The amended complaint alleges that the Commission's refusal to grant New York Air access to the Airport was an impermissible regulation of the routes and services of an interstate air carrier and, as such, unrelated to any legitimate local interest. The complaint also alleges that concerns as to the adequacy of the Airport facilities to accommodate New York Air's proposed service were pretextual, since jet service had previously been available at the Airport, and that there was therefore no legitimate basis for the Commission's action. Finally, New York Air states that it proposed to resolve possible problems arising from facilities constraints at the Airport and to assist in securing compliance with federal regulations, thereby minimizing any valid concern with potential difficulties. These allegations are sufficient to state a claim under the commerce clause.[4]

■ The questions whether the Commission's refusal to grant access served to promote legitimate local interests and, if so, whether the burden that it placed on interstate commerce was excessive involve issues of fact that cannot be resolved by a motion to dismiss. For the same reason, defendant's argument that the Commission's action was a valid exercise of the proprietary rights reserved to the states under 49 U.S.C. § 1305(b) is not capable of resolution at this stage of litigation.[5]

### II. *The Claims Under the Federal Aviation Laws*

The more significant issue raised by defendants' motion to dismiss is the propriety

---

4. Courts have recognized the propriety of the commerce clause as a ground for challenging a denial of airport access. *See, e.g., Concorde I,* 558 F.2d at 85 n. 3.

5. New York Air has alleged a sufficient "personal stake in the outcome of the controversy" to satisfy the constitutional requirements of standing. *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The amended complaint alleges "actual injury" caused by defendants' conduct that is "redressable by the court." *Director, Office of Workers' Comp. Programs v. Perini North River Assocs.,* 459 U.S. 297, 305, 103 S.Ct. 634, 641, 74 L.Ed.2d 465 (1983). No objection has been raised as to New York Air's standing to assert claims based on the supremacy clause and the commerce clause of the Constitution. The issue whether New York Air has a cause of action based on the

federal aviation statutes involves the general question "whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court...." *Davis v. Passman,* 442 U.S. 228, 239–40 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1978); *see Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). "[T]he question of who may enforce a *statutory* right is fundamentally different from the question of who may enforce a right that is protected by the Constitution." *Davis,* 442 U.S. at 241, 99 S.Ct. at 2275 (emphasis in original). With respect to a statutory cause of action, the focus of inquiry is "the nature of the legislative intent informing a specific statute." *Id.; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 186 (1982).

of New York Air's claims under the federal aviation laws, 49 U.S.C. §§ 1305(a), 1349(a), 2210(a). New York Air argues principally that it is entitled to bring its statutory claims under 42 U.S.C. § 1983.

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that 42 U.S.C. § 1983 "broadly encompasses violations of federal statutory as well as constitutional law." 448 U.S. at 4, 100 S.Ct. at 2504. The Court subsequently limited the potential expansion of *Thiboutot* by defining two types of circumstances in which a § 1983 remedy would not be available. The decisive issues are: "(i) whether Congress [intended to foreclose] private enforcement of [a] statute in the enactment itself, and (ii) whether the statute at issue [is] the kind that create[s] enforceable 'rights' under § 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981), *rev'd on other grounds*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Under *Sea Clammers* and *Pennhurst*, a plaintiff can enforce all federal laws against state officials under § 1983 "unless it can be shown that Congress affirmatively intended to foreclose such enforcement by failing to impose mandatory obligations or by creating a comprehensive remedial scheme in the statute itself." *Samuels v. District of Columbia*, 770 F.2d 184, 195 (D.C.Cir. 1985).

■ The effect of *Thiboutot* is to make available a remedy for violations of federal law against state action in a manner analogous to implied private rights of action. The inquiry under § 1983, however, is distinct from the analysis used to determine whether a private right of action should be judicially implied. In order to establish an implied private right of action under a federal statute, a plaintiff must demonstrate a congressional intention to provide for private enforcement of the statute. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Section 1983 provides an express remedy against violations of federal law by state officials, and Congress is "presumed to legislate against the background of section 1983 and thus to contemplate private enforcement of the relevant statute...." *Samuels*, 770 F.2d at 194; *see also Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission*, 739 F.2d 1467, 1470 (9th Cir.1984); *Ryans v. New Jersey Commission for the Blind and Visually Impaired*, 542 F.Supp. 841, 846–47 (D.N.J.1982).

■ Nevertheless, the inquiry under § 1983 is similar to the analysis of implied private rights of action, since in each instance a party must demonstrate the existence of a federal right which may be judicially enforced. *See Curran*, 456 U.S. at 376–78, 102 S.Ct. at 1838–39; *Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2625; *Cort*, 442 U.S. at 78, 95 S.Ct. at 2087; *see also Polchowski v. Gorris*, 714 F.2d 749, 751 (7th Cir.1983). In *Cort v. Ash*, the Court considered four factors in determining whether a private right of action is to be implied under a federal statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). The Court has emphasized in subsequent cases that these factors are primarily indications of legislative intent. *See, e.g., Curran*, 456 U.S. at 377–78, 102 S.Ct. at 1838–39; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). The first of the *Cort* factors, the especial benefit test, specifically concerns the question whether a federal right has been created.

■■■ Section 1983 by its terms provides a remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...." 42 U.S.C. § 1983. It is clear that § 1983 is an exclusively remedial statute and does not itself give rise to any substantive rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). In order for the remedy provided by § 1983 to be available, a party must establish the violation of a federal right independent of § 1983. The violation of a federal statute, by itself, is insufficient to give rise to a cause of action under § 1983. Rather, "the statute violated must be one that confers a federal right." *Balf Co., Inc. v. Gaitor*, 534 F.Supp. 600, 604 (D.Conn.1982) (quoting *Myerson v. State of Arizona*, 507 F.Supp. 859, 864 (D.Ariz.1981), *aff'd*, 709 F.2d 1235 (9th Cir.1983), *vacated on other grounds*, 465 U.S. 1095, 104 S.Ct. 1584, 80 L.Ed.2d 118 (1984)).

Courts have taken divergent views as to how broadly "rights" for purpose of § 1983

are to be construed. At one extreme, it has been held that the effect of *Thiboutot* is "to create a remedy where ... injury flows from a state's violation of governing federal law in a joint federal-state cooperative program." *Yapalater v. Bates*, 494 F.Supp. 1349, 1358 (S.D.N.Y.1980), *aff'd*, 644 F.2d 131 (2d Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).[6] Courts since *Yapalater* have required a plaintiff to demonstrate, in addition, that "it ... was an *intended beneficiary* of that program." *Balf Co.*, 534 F.Supp. at 605 (emphasis in original). Other courts have required a showing of benefit similar to that necessary to establish an implied private right of action. *Boatowners and Tenants Association v. Port of Seattle*, 716 F.2d 669, 673 (9th Cir.1983); *Polchowski*, 714 F.2d at 751; *Lynch v. King*, 550 F.Supp. 325, 343, 349 (D.Mass. 1982), *aff'd sub nom. Lynch v. Dukakis*, 719 F.2d 504 (1st Cir.1983).[7]

■■■ The Court in *Pennhurst* indicated that § 1983 is not available to enforce precatory statements of policy in federal statutes. *Pennhurst*, 451 U.S. at 22, 101 S.Ct. at 1542. In order to give rise to enforceable rights, a statute must mandate a particular course of action, that is, it must impose binding obligations on the states. *Id.* at 28, 101 S.Ct. at 1545. This does not imply, however, that all obligations imposed on the states are enforceable under § 1983. Where courts have relied on the mandatory language of a particular statute in determining whether, in light of the exception to *Thiboutot*, enforceable rights were violated, it could be demonstrated that Congress intended to confer benefits on the parties under the relevant statute.

---

**6.** This position derives from Justice Powell's dissent in *Thiboutot*. Justice Powell thus characterized the legal implications of the majority opinion:

> In practical effect, today's decision means that state and local governments, officers and employees now may face liability whenever a person believes he has been injured by the administration of *any* federal-state cooperative program, whether or not that program is related to equal or civil rights.

*Thiboutot*, 448 U.S. at 22, 100 S.Ct. at 2513 (Powell, J., dissenting) (emphasis in original).

*Yapalater*, however, was decided before the Supreme Court decisions in *Pennhurst* and *Sea Clammers* limiting the application of *Thiboutot*.

**7.** *See also First National Bank of Omaha v. Marquette National Bank*, 636 F.2d 195, 198 (8th Cir.1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981) (holding § 1983 action limited to claims "in the nature of the rights protected by the Civil Rights Act," including "fundamental human, highly personalized rights....").

See Samuels, 770 F.2d at 198; *Keaukaha-Panaewa Community Association*, 739 F.2d at 1470; *Ryans*, 542 F.Supp. at 847.

▮▮▮▮▮ Whether a statute confers a federal right is the specific inquiry raised by the first factor in *Cort.* The analysis of this factor is at least instructive for the analogous determination whether a statute creates rights enforceable under § 1983.[8] The threshold consideration raises the question of congressionally intended benefits, specifically, whether the plaintiff is a member of the class for whose particular benefit the statute was enacted. *Cort*, 422 U.S. at 77–78, 95 S.Ct. at 2087–88.[9] The primary indication derives from the language of the statute itself. *University Research Association, Inc. v. Coutu*, 450 U.S. 754, 771–72, 101 S.Ct. 1451, 1461–62, 67 L.Ed.2d 662 (1981); *Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979). As the Supreme Court has indicated, the analysis involves consideration of legislative intent. "The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *see Boatowners*, 716 F.2d at 672–73. In order to maintain an action under § 1983, it must be demonstrated in terms of this analysis that a federal right is created by a particular statute.

A. Section 511(a) of the Airport and Airway Improvement Act

Section 511(a) of the Airport and Airway Improvement Act of 1982 ("AIP") provides that:

---

**8.** Even the direct application of elements of the *Cort* analysis in this context does not have the effect of eradicating the distinction between private rights of action and rights under § 1983. *See Boatowners*, 716 F.2d at 674; *Keaukaha-Panaewa Community Association*, 739 F.2d at 1470.

**9.** While the especial benefit requirement is appropriate to implied private right of action analysis, it is arguably unnecessarily restrictive in determining whether rights exist for purposes of § 1983. *See*, Note, *Making the Old Federalism*

---

[I]n a project grant application submitted under this Title, the Secretary shall receive assurances, in writing, satisfactory to the Secretary, that—

(1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination, including the requirement that (A) each air carrier using such airport ... shall be subject to such nondiscriminatory and substantially comparable rates, fees, rentals, and other charges and such nondiscriminatory and substantially comparable rules, regulations, and conditions, as are applicable to all such air carriers which make similar use of such airport and which utilize similar facilities....

(2) there will be no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public....

49 U.S.C. § 2210(a). Section 18 of the Airport and Airway Development Act of 1970, the predecesor of the present statute, provided that airports subject to the project approval requirements of that section "be available to the public on fair and reasonable terms and without unjust discrimination." *See* 49 U.S.C. § 1718. This section was amended in 1976 to include specifically air carriers and fixed-base operators. The statute expressly identifies air carriers as the class Congress intended to benefit. *Cf. Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 926 (1st Cir.1983).

▮▮▮▮▮ It is clear from the legislative history of 49 U.S.C. § 1718 that Congress

---

*Work: Section 1983 and the Rights of Grant-in-Aid Beneficiaries*, 92 Yale L.J. 1001, 1010–11 (1983). Plaintiffs in this case do not claim any "legitimate claim of entitlement" under the federal aviation laws. A showing of congressional intent to confer some benefit is consistent with the analysis of entitlements. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The question is ultimately one of legislative intent, whether Congress intended to create enforceable rights.

in enacting the 1976 amendments intended to recognize "the legitimate interest of air carriers and fixed-base operators in development at airports." H.R.Rep. No. 94–594, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 1600, 1614. Section 18, as amended, was intended to require airport sponsors to "accord ... rights of consultation" to air carriers and fixed-base operators in making decisions to undertake airport development "in order that the views of both shall receive full consideration in determining the nature and scope of airport development projects for such airports." *Id.* In addition, "Sponsors would be prohibited from charging discriminatory rates, fees, rentals, and other charges to airport businesses which make the same or similar uses of such airport utilizing the same or similar facilities." *Id.* The intent of the amendment, as explained by Senator Cannon in introducing the legislation, was "that air carriers authorized under the Federal Aviation Act of 1958 to engage directly in air transportation shall not be subjected to discriminatory treatment at airports by reason of class of carrier." 122 Cong. Rec. 8145 (1976). Although the specific concern of Congress was with discrimination against supplemental carriers, the language adopted in the amendment comprehensively includes all air carriers using the airport. The legislative history therefore indicates that Congress in enacting the statute intended to benefit air carriers by imposing the requirement on airport operators that carriers be subject to nondiscriminatory and substantially comparable treatment.

The statute, moreover, uses mandatory language. Airport operators are required to insure that the airport "will be available for public use on fair and reasonable terms and without unjust discrimination...." 49 U.S.C. § 2210(a)(1). Each air carrier "shall be subject to ... nondiscriminatory and substantially comparable" terms and conditions. *Id.* The statute further provides "there will be no exclusive right" for the use of airport facilities. 49 U.S.C. § 2210(a)(2). The mandatory character of the obligation created by the statute indicates that the section was not intended as a precatory expression of congressional preference. *See Samuels*, 770 F.2d at 198; *Keaukaha-Panaewa Community Association*, 739 F.2d at 1471. Section 511(a) of the AIP therefore creates rights enforceable under § 1983.[10] *But see Hill Aircraft and Leasing Corp. v. Fulton County, Ga.*, 561 F.Supp. 667 (N.D.Ga. 1982), *aff'd without op.*, 729 F.2d 1467 (11th Cir.1984) (involving related issue of implied private right of action under 49 U.S.C. § 1718 (as amended, 1976)).

The second exception to *Thiboutot*, that is, where Congress specifically intended to foreclose enforcement under § 1983 by creating a comprehensive remedial scheme in the statute itself, does not bar an action under § 1983 for an alleged violation of section 511(a) of the AIP. The AIP itself contains no independent enforcement mechanism. Moreover, § 1106 of the Federal Aviation Act, 49 U.S.C. § 1506, further provides that the statutory remedies are not intended to be exclusive. *See also Midway Airlines*, 589 F.Supp. at 437–38 (intervention by federal government in suit brought by private plaintiff); *United States v. State of New York*, 552 F.Supp. 255, 260–61.

Thus, considering the federal aviation statutes as a whole, private enforcement under § 1983 would not conflict with the congressionally established remedial scheme. *See* 49 U.S.C. § 1487.

**10.** The fact that the statute is a directive to a federal agency does not alter this conclusion. The Secretary is required under the statute to receive assurances from airport sponsors that the airport will be available on fair, reasonable and nondiscriminatory terms. Such language has been held to create enforceable rights. *See* *Cohen v. Massachusetts Bay Transp. Authority*, 647 F.2d 209, 210 (1st Cir.1981); *Boles v. Earl*, 601 F.Supp. 737, 743 (W.D.Wisc.1985); *see also* Wartelle and Louden, *Private Enforcement of Federal Statutes: The Role of the Section 1983 Remedy*, 9 Hastings Const.L.Q. 487, 529 n. 289 (1982).

■ New York Air alleges facts sufficient to state a claim under Section 511(a) of the AIP. The allegation that New York Air was excluded from the Airport because of pretextual concern with the adequacy of facilities at the Airport supports the inference, as alleged, that there was no reasonable basis for the Commission's action. New York Air also claims that the Commission's refusal was unfair and discriminatory in that it was allegedly based on the opinion that existing service at the Airport was adequate and on concern with the potential effect on competition of New York Air's proposed service. The effect of the Commission's refusal is, arguably, to grant exclusive rights to carriers already providing service to the Airport. The complaint therefore sufficiently states a claim under § 1983 for a violation of Section 511(a) of the AIP.

B. Section 308(a) of the Federal Aviation Act

Section 308(a) of the Federal Aviation Act provides that:

No Federal funds, other than those expended under this Act, shall be expended, other than for military purposes ... for the acquisition, establishment, construction, alteration, repair, maintenance, or operation of any landing area, or for the acquisition, establishment, construction, maintenance, or operation of air navigation facilities thereon, except upon written recommendation and certification by the Administrator [Secretary of Transportation] that such landing area or facility is reasonably necessary for use in air commerce or in the interest of national defense. Any interested person may apply to the Administrator [Secretary of Transportation], under regulations prescribed by him, for such recommendation and certification.... There shall be no exclusive right for the use of any landing

area or air navigation facility upon which Federal funds have been expended.

49 U.S.C. § 1349(a). Again, the requirement that there be "no exclusive right" for the use of air facilities is made in the context of the establishment of approval and certification procedures for the expenditure of federal funds. The section is directed primarily to the Secretary of Transportation.

■ Unlike 49 U.S.C. § 2210(a), § 1349(a) does not appear to be evidence of a congressional intent to create a federal right under section 308(a). The statute imposes a general prohibition on the exclusive use of air facilities on which federal funds have been expended and therefor confers benefits on the general public, rather than on any specific class. The general language of the statute precludes recognition of a federal right in favor of air carriers under this section. *See Boatowners*, 716 F.2d at 673–74; *cf. Cannon v. University of Chicago*, 441 U.S. at 690–93, 99 S.Ct. at 1954–56 (1979).[11]

C. Section 105(a) of the Federal Aviation Act

The analysis of New York Air's claim that § 105(a) of the Federal Aviation Act, 49 U.S.C. § 1305(a), creates a federal right involves rather different considerations. Section 105(a) expressly prohibits any "State or political subdivision thereof" from regulating the "rates, routes or services" of interstate air carriers. 49 U.S.C. § 1305(a). The provision was enacted as part of the Airline Deregulation Act of 1978, by which Congress sought, among other purposes, to increase reliance on market forces and competition in the development of a national air transportation system. *See* 49 U.S.C. § 1302(a)(4). The statute identifies interstate air carriers operating by "authority under title IV of [the] Act [49 U.S.C. §§ 1371 et seq.]" as a de-

---

**11.** Courts applying the *Cort v. Ash* analysis have held with respect to the first factor in *Cort* that § 1349(a) does not create a federal right. *Hill*

*Aircraft and Leasing Corp.*, 561 F.Supp. at 673; *Guthrie v. Genesee County, New York*, 494 F.Supp. 950, 959 (W.D.N.Y.1980).

fined class of beneficiaries. The prohibitory language is mandatory. *See Pennhurst*, 451 U.S. at 20, 101 S.Ct. at 1541.

■ It is clear from the legislative history, however, that the intent of Congress in enacting section 105(a) was to regulate the jurisdiction of federal and state governments over interstate air carriers. The House Report accompanying the legislation noted that:

> Existing law contains no specific provision on the jurisdiction of the States and the Federal Government over airlines which provide intrastate and interstate service. The lack of specific provisions has created uncertainties and conflicts, including situations in which carriers have been required to charge different fares for passengers traveling between two cities, depending on whether these passengers were interstate passengers whose fares are regulated by the CAB, or intrastate passengers, whose fare is regulated by a State.
>
> H.R. 12611 will prevent conflicts and inconsistent regulations by providing that when a carrier operates under authority granted pursuant to title IV of the Federal Aviation Act no State may regulate that carrier's routes, rates, or services.

H.R.Rep. No. 95–1211, 95th Cong., 2d Sess. *reprinted in* 1978 U.S.Code Cong. and Ad. News 3751–52. The principal concern of this section is the allocation of authority between the federal and state governments, not the establishment of individual rights. There is no indication in the legislative history of this provision that Congress intended section 105(a) to give rise to a federal right.

■ New York Air's claim under section 105(a) is, in essence, that state regulation of the rates, routes, and services of interstate carriers is preempted by that provision. This is a claim under the supremacy clause of the Constitution, art. VI, cl. 2. In *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615, 99 S.Ct. 1905, 1914, 60 L.Ed.2d 508 (1979) the Supreme Court, interpreting the scope of the jurisdictional provision 28 U.S.C. § 1343(a), concluded that the supremacy clause does not secure and is not itself a "right, privilege, or immunity secured by the Constitution." 28 U.S.C. § 1343(a)(3). The Court stated:

> Thus, while we recognize that there is force to claimants' argument that the remedial purpose of the civil rights legislation supports an expansive interpretation of the phrase "secured by the Constitution," . . . . we must conclude that an allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim "secured by the Constitution" within the meaning of § 1343(3).

441 U.S. at 615, 99 S.Ct. at 1915. Generally, the assertion of a supremacy clause claim is not cognizable under 42 U.S.C. § 1983. *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 586 (D.R.I.1983); *cf. Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139, 1144–45 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984) (commerce clause). This principle has been specifically recognized in the context of the federal aviation laws. *Pirolo v. City of Clearwater*, 711 F.2d 1006, 1010, 1013 *reh'g denied*, 720 F.2d 688 (11th Cir.1983).[12]

---

**12.** Controversies as to the relative authority of state and federal governments are distinct, in terms of the appropriate analytic framework, from issues involving the rights of individuals:

> When a litigant contends that . . . an attempted state regulation intrudes into an area of exclusively national concern, the constitutional issue is wholly different from that posed by an assertion that certain government action abridges a personal liberty secured by the Constitution. The essence of a claim of the latter type . . . is that no organ of government, national or state, may undertake the challenged activity. In contrast, when a person alleges that one of the federalism provisions of the Constitution has been violated, he implicitly concedes that one of the two units of government—national or state—has power to engage in the questioned conduct. The core of the argument is simply that the particular

■ Congress is presumed to legislate against the background of the supremacy clause, U.S. Const., art. VI, cl. 2, and § 1983. The preemptive effect of federal legislation does not ordinarily create rights for purposes of § 1983. The issue raised by section 105(a) of the Federal Aviation Act, therefore, is whether the express language adopted by Congress indicates a clear intention to create enforceable rights. The specific statutory focus on interstate air carriers is not conclusive in this respect, and there is no indication of any such purpose in the legislative history of section 105(a). Construed in light of the primary purpose of the provision, and absent a clear indication of further congressional intent, the language of section 105(a) does not create a federal right. Section 105(a) effects, by means of a prohibition upon the states, a reservation of authority to the federal government over interstate air carriers.

For the reasons previously stated, the court finds that the plaintiff may maintain its 42 U.S.C. § 1983 claim to the extent that it is based upon 49 U.S.C. § 2210(a), but not to the extent to which it relies upon 49 U.S.C. § 1349 or 49 U.S.C. § 1305(a).[13]

### III. *The Claim Under the Antitrust Laws*

■ Section 1 of the Sherman Act makes unlawful any "contract, combination ... or conspiracy, in restraint of trade or commerce among the several states...." 15 U.S.C. § 1. In order to state a claim under this section, a plaintiff must allege the existence of a contract, combination or conspiracy that is in restraint of interstate trade or commerce and that has resulted in injury to the plaintiff. *Oreck Corp. v.*

*Whirlpool Corp.,* 639 F.2d 75, 78 (2d Cir. 1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.,* 632 F.2d 1135 (4th Cir.1980); *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255 (8th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980).

■ In its amended complaint, New York Air alleges that the Commission's refusal to grant it access to the Airport was based in part on the concern of some Commission members that PBA, which already provides service at the Airport, would be faced with competition from the proposed service. These concerns were purportedly expressed at the April 24, 1985 meeting, at which New York Air's request for permission to operate at the Airport was denied. New York Air also alleges that at the same meeting a representative of PBA stated that PBA would cease providing winter service to Martha's Vineyard if New York Air's proposed service was approved by the Commission. It is alleged that the Commission's action resulted in injury to New York Air, in the form of the loss of business opportunity by means of its exclusion from Martha's Vineyard, loss of goodwill, and loss of revenues and profits. The amended complaint thus asserts that the Commission acted in concert with PBA to deprive New York Air of the access to Airport facilities necessary for it to compete with carriers already operating at the Airport in the provision of air services to Martha's Vineyard. This was purportedly done by means of the Commission's consideration of "impermissible factors" at the April 24, 1985 meeting and with the purpose, in part, of eliminating New York Air

government that has acted is the constitutionally improper one.

J. Choper, *Judicial Review in the National Political Process* 174–75 (1980) (quoted in *United Nuclear Corp.,* 564 F.Supp. at 586–87.)

**13.** In view of the determination that the plaintiff has, under 42 U.S.C. § 1983, a cause of action based upon 49 U.S.C. § 2210(a), it is not necessary to decide whether there is also a private right of action implied by § 2210(a). As the court has decided that neither 49 U.S.C. § 1349 nor § 1305(a) create rights enforceable by plaintiff under 42 U.S.C. § 1983, it follows that there is also no private right of action created by those provisions alone.

as a competitor. The alleged conduct is analogous to a "concerted refusal to deal." *Cf. Corey v. Look,* 641 F.2d 32, 36 (1st Cir.1981); *Barry v. St. Paul Fire & Marine Insurance Co.,* 555 F.2d 3, 7 (1st Cir.1977), *aff'd,* 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). The amended complaint, therefore, sufficiently alleges the elements necessary to state a claim under section 1 of the Sherman Act.[14]

■■■ Defendants argue principally that the Commission's refusal to grant New York Air access to the Airport is exempt from the antitrust laws as action sanctioned by state authority. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The *Parker* doctrine, however, exempts conduct engaged in by a state or its subdivisions provided it is undertaken "pursuant to state policy to displace competition with regulation or monopoly public service." *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978). For the exemption under *Parker* to apply to specific conduct two standards must be met: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the state itself. *California Retail Liquor Dealers Association v. Midcal Aluminium, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *see Town of Hallie v. City of Eau Claire,* —— U.S. ——, 105 S.Ct. 1713, 1720 n. 10, 85 L.Ed.2d 24 (1985). Sufficient state authority to engage in anticompetitive conduct may be found where it is determined " 'from the

authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of,' " *City of Lafayette,* 435 U.S. at 389, 415, 98 S.Ct. at 1138 (quoting opinion below, 532 F.2d 431, 434 [5th Cir.1976] ), or where the "anticompetitive effects logically would result from [the] authority to regulate." *Town of Hallie,* 105 S.Ct. at 1718. In order to meet these requirements, "the political subdivision claiming exemption must illustrate the requisite legislative intent by demonstrating by convincing reasoning that the challenged restraint is necessary to the successful operation of the legislative scheme that the state as sovereign has established." *Corey,* 641 F.2d at 37.

■■ The authority of the Commission derives from Mass.Gen.Laws ch. 90, §§ 51E–52. *See id.,* § 39G. Airport commissions are specifically empowered to lease airport facilities, to determine charges and rentals for the use of airport property, to enter into contracts and to expend funds for the maintenance, operation and construction of the airport, and to adopt rules and regulations for the use of the airport to insure the public safety. *Id.,* §§ 51F, 51H, 51I, 51J. These statutes confer authority on the Commission to perform functions necessary to the establishment and operation of the Airport. They do not on their face demonstrate a clear intent on the part of the state to displace competition by the provision of monopolistic public services or to authorize anticompetitive conduct in the management of the Airport. There is no indication that anti-

---

**14.** There are no special pleading requirements for antitrust claims. *Corey,* 641 F.2d at 38; *see also McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). Defendants' contention that the amended complaint lacks a sufficient factual basis to state a claim under the antitrust laws must be rejected, in light of the liberal pleading requirements of the Federal

Rules of Civil Procedure, Fed.R.Civ.P. 8(a). Defendants' assertion that the amended complaint makes only a "bare allegation ... that the Commission's alleged conduct was pursuant to a 'contract, combination or conspiracy' with PBA" ignores the factual allegations in the complaint. Defendants' Memorandum in Support of Motion to Dismiss at 26. There is no inconsistency, as defendants claim, in New York Air's allegation that the Commission's action was based on several factors, one of which constituted a violation of the antitrust laws.

competitive conduct is necessary to the operation of the statutory scheme. The fact that the Commission may adopt rules and regulations to insure the safety of the public is not sufficient evidence of authority to engage in anticompetitive conduct such as that alleged by New York Air. There is no "necessary anticompetitive implication" from the legislative grant of authority. *Corey,* 641 F.2d at 37; *see Town of Hallie,* 105 S.Ct. at 1718.

In addition, airport commissions are accorded a measure of discretion by these statutes. There are no provisions for state review, nor are there other indications that the state is actively supervising the activities of the Commission pursuant to state policy.[15]

Under these circumstances, the Commission's action is not clearly exempt from challenge under the antitrust laws. *See Guthrie,* 494 F.Supp. at 954–58; *Pinehurst Airlines, Inc. v. Resort Air Services, Inc.,* 476 F.Supp. 543 (M.D.N.C.1979). At least at this stage of the litigation, defendants have not demonstrated that the amended complaint fails to state a claim under 15 U.S.C. § 1.

\*     \*     \*

Accordingly, defendants' motion to dismiss is DENIED as to New York Air's claims under the supremacy clause, U.S. Const., art. VI, cl. 2; under the commerce clause of the Constitution, art. I, sec. 8, cl. 3; under 42 U.S.C. § 1983 to the extent they are based upon 49 U.S.C. § 2210(a); and under the Sherman Act, 15 U.S.C. § 1.

Defendants' motion to dismiss is ALLOWED as to New York Air's claims under 49 U.S.C. §§ 1305(a) and 1349(a), and 42 U.S.C. § 1983 to the extent they are

based upon those provisions of the federal aviation statutes.

SO ORDERED.

---

**15.** State action authorizing regulation of the rates, routes and services of interstate carriers would be preempted by federal law. 49 U.S.C. § 1305(a). Defendants' argument that the state action exemption from the antitrust laws applies in this instance rests on the assumption that the Commission's action is within the pro-

prietary authority reserved to the states. 49 U.S.C. § 1305(b). As with defendants' argument in relation to New York Air's constitutional claims, this contention is premature. There is no evidence before the court by which this issue can be resolved.