AMERICAN AIRLINES, INC., et al.

v.

CITY OF PHILADELPHIA.

Civ. A. No. 74–1571.

United States District Court,
E. D. Pennsylvania.

June 29, 1976.

Bernard J. Smolens, Ralph S. Snyder, Philadelphia, Pa., for plaintiff Airlines.

Peter Hearn, Philadelphia, Pa., for plaintiff Altair.

Pace Reich, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

Before us is a challenge by the plaintiffs,[1] (airlines), to certain rates and charges imposed by defendant, (City), for the use of facilities at the Philadelphia International Airport and North Philadelphia Airport. The airlines contend that the rates imposed by the City, under Airport Rates and Charges Regulation No. 1, are confiscatory, discriminatory, an unauthorized burden on interstate commerce, and in violation of Title 11, § 1113 of the Federal Aviation Act, 49 U.S.C. § 1513, and § 18 of the Federal Airport and Airways Development Act of 1970, 49 U.S.C. § 1718.

From the outset of this litigation in June, 1974, the parties have attempted, in earnest, to amicably settle their differences. However, these efforts aborted on March 10, 1976, when the City stated that it could not consummate the settlement upon the terms and conditions the parties had before them.

As a direct result of the termination of these negotiations, there are now three motions pending before us. *First:* a motion filed by the airlines to enforce a settlement agreement (Motion to Enforce), in which the airlines contend that the settlement negotiations in fact resulted in a binding and enforceable agreement, which, but for reduction to a single writing, was in fact consummated in all respects. *Second:* a Motion for Summary Judgment filed by the City in opposition to the Motion to Enforce. *Third:* a motion by the airlines to stay the imposition of the City's latest rate regula-

tion,[2] pending our determination of the airlines' Motion to Enforce and the City's Motion for Summary Judgment (Motion to Suspend).

We have reviewed all of the documents, including the briefs submitted to us, and have had extensive argument by the parties on all three motions. We have taken the City's Motion for Summary Judgment and the airlines' Motion to Enforce under advisement. We will, however, grant the airlines' Motion to Suspend, subject to the ensuing terms and conditions which will be reflected in our Order. All of the parties agree that the critical date is July 1, 1976, when regulation 2, which supersedes regulation 1, goes into effect. Hence, it is vital, pending final disposition of the matter, that a course be charted for the parties.

## I. PROCEDURAL HISTORY AND FACTS OF THE CASE

Plaintiffs filed their complaint in this action on June 20, 1974, together with a request for a preliminary injunction. After numerous conferences, the parties agreed to an interim settlement pending a permanent injunction hearing; that settlement was recorded in open court on July 17, 1974, with our approval. Trial upon issues raised by the request for a permanent injunction was scheduled for October 15, 1974, although the parties expressed optimism with respect to an amicable resolution before that date.

They then embarked upon a course of negotiations which, as they evolved, extended over the following twenty months; the culmination of that effort has been the resuscitation of the litigation, as evidenced by the motions before us. During this period, numerous conferences were held by the court with the parties, with trial dates set and reset several times at their behest, on the strength of their continual assurances

---

1. The plaintiffs in this action are American Airlines, Inc.; Allegheny Airlines, Inc.; Delta Airlines, Inc.; Eastern Airlines, Inc.; National Airlines, Inc.; Northwest Airlines, Inc.; Pan American World Airways; Trans World Airlines, Inc.; and United Air Lines, Inc. Altair Airlines, Inc., is an intervenor-plaintiff. Altair did not join in the motions presently before us;

therefore any reference, in this memorandum, to the airlines or the parties is not intended to include Altair.

2. Airport Rates and Charges Regulation No. 2, which is scheduled to go into effect on July 1, 1976.

to us, on each occasion, that the light at the end of the tunnel was just around the bend.

On November 19, 1974, the date set for a pretrial conference prior to the November 25, 1974 trial date, the litigants, through counsel for the airlines, informed us that the case was, in effect, settled, but that it would take six months for preparation and execution of a formal final agreement by all of the parties. On the basis of that representation, the November 25th trial date was rescheduled for April 2, 1975, as a failsafe measure, in the event that the final agreement was not in fact consummated. By letter dated March 26, 1975, counsel for the airlines requested an additional sixty days for preparation and execution of the final document. We postponed the April trial date and set a conference for June 2, 1975, on the basis of that request. Six days before this conference, on May 27, 1975, counsel requested an additional two month extension. We insisted, however, that the parties report to us on June 2nd with respect to the progress in concluding the final draft of the agreement. At that conference, we discussed the problems which the parties were having in consummating their documentation; on the basis of the statements of counsel, we concluded that they were, in fact, minimal, and that the process realistically could be completed by July 28, 1975. We therefore scheduled another conference for that date, and clearly impressed upon the parties that the July date was, in fact, a deadline.

Although that deadline was not met, counsel reported to the court on September 10, 1975, that all disputes had been resolved, and that the stage of final memorialization had been reached. Again, at their urging, we continued the matter and set another conference for November 20, 1975, in order to afford the parties the necessary time to complete the final draft and to have that instrument executed. The airlines attach as Exhibit "A" to their Motion to Enforce, a document, which they contend represents the agreement reached by the parties in September, 1975. This instrument was not executed, however, because of numerous problems raised by the City's bond counsel. The review by bond counsel, and the ensuing negotiations with respect to the points raised, caused further delays in connection with the consummation of the agreement.

On February 24, 1976, the parties appeared before us at another conference, and reported that all remaining issues had finally been resolved. We established a firm date of April 1, 1976, to iron out minor language changes which we were informed still remained to be resolved, and for procurement of commitments of agreement from the respective airline authorities. At that same conference, we established time frames for the litigation between Altair Airlines and the City, and set June 1, 1976 as the trial date.[3] We scheduled another conference for April 6, 1976, and informed counsel that we would not tolerate any further delays in the settlement negotiations; we stated that if an agreement was not executed by April 6th, we would set that case for trial on June 1st, as well.

On March 10, 1976, the parties had before them a document, (a copy of which was attached to the Motion to Enforce as Exhibit "B"), which the airlines contend reflected the essential terms of the agreement the parties had then reached. The refusal of the City to execute that instrument has prompted the motions now before us.

At an initial hearing on the Motion to Enforce, on May 3, 1976, the parties stated that an immediate problem had developed as a result of the City's refusal to execute the alleged agreement, and its concomitant decision to proceed with the relocation of the air field taxi-way and roadway system in accordance with existing plans for the new terminal facilities. The airlines were reluctant to move into their new facilities without an enforceable agreement with the City as to rates and charges for the use of those facilities. We inquired about the feasibility of agreement upon a stipulation under which the City would calculate its rates

---

**3.** Altair, the intervenor-plaintiff, was involved in the bulk of the settlement negotiations, but it appeared unlikely, at that time, that it would join in any final settlement agreement.

in accordance with the alleged settlement agreement, pending our disposition of the airlines' Motion to Enforce. We were then and there informed by counsel for the City as follows:

In order to induce them to move I called [counsel for the airlines] and suggested a stipulation whereby, until Your Honor would order that the Agreement was not binding upon the City, in order to induce them to move we would be bound by the financial terms of the Agreement if they would move and then only after Your Honor were to decide against them, i. e., that there is no agreement which is binding upon the City, would we then go to a different method of financial remuneration. (N.T., May 3, 1976, pp. 35–36).

At that time, counsel for the City handed to the Court and to opposing counsel a copy of a proposed stipulation setting forth such basic terms. Counsel for the airlines stated that although he had not had the opportunity to read through the proposal carefully, he would require one addition to the proposal before he could sign it—a provision which would preserve the right of the airlines to challenge and litigate the legality of any new rates and charges imposed by the City, in the event it was found that the settlement agreement was not binding upon the City. In response to our inquiry, counsel for the City stated that such a provision was acceptable. The airlines did, in fact, move into the new airport facilities on May 3 and 4, 1976. This stipulation was never executed, however, because irreconcilable differences arose between the City and the airlines as to the form of the preservation of rights clause to be included in that document. Hence, the failure of the parties to sign the proposed stipulation will result in Regulation 2 going into effect on July 1, 1976, unless we grant the relief requested by the airlines.

## II. DISCUSSION OF THE LAW AND OF THE INTERIM RESOLUTION OF THE ISSUES PRESENTED

The airlines raise two basic contentions in their Motion to Suspend Regulation 2:

*FIRST,* that the proposed stipulation of counsel was, in fact, agreed to by the City in the colloquy which took place at the May 3, 1976 hearing; *SECOND,* that the City should be estopped to deny the validity of that stipulation, because its proposal was the inducement for the airlines to move into the new airport facilities. In either event, the airlines argue that the record before us is sufficient to justify, if not mandate, our entry of an order specifically enforcing the proposed stipulation by enjoining the implementation of Regulation 2, pending our determination of the validity and enforceability of the putative overall settlement agreement.

The City does not dispute the proposition that, if we find, as a factual matter, that the stipulation was orally agreed to by counsel for the City and the airlines in open court, we have the authority and power to enforce that stipulation. Cf., *Oliver v. City of Shattuck,* 157 F.2d 150, 153 (10th Cir. 1946); *United States v. Ricks,* 155 U.S.App. D.C. 57, 475 F.2d 1326, 1328 (1973). The City denies the existence of a valid stipulation on the ground that the parties reached an impasse over an essential term of the stipulation; namely, the preservation of rights clause; moreover, it contends that the airlines have not suffered any economic hardship *as a result of the move,* and in fact, have benefited by it; hence, the City argues that it should not be estopped to deny its consent to the stipulation.

In support of its first contention, the City directs our attention to the affidavit of its counsel, which sets forth that in a telephone conversation between counsel on May 24, 1976, it became abundantly clear that the parties could not agree on the critical point with respect to preservation of the right of the airlines to attack Regulation 2, or any future regulation. As a result of that conversation, counsel for the City alleges "[i]t was then agreed between Mr. Smolens and me that the stipulation was not to be executed in any form." (Affidavit of Pace Reich, Esquire, dated June 24, 1976). Because this specific averment of one isolated

conversation is not denied, or otherwise contested by the airlines, the City leaps to the conclusion that the parties did not intend to be bound by any stipulation.

We need not and will not wear such blinders and, accordingly, summarily reject this contention. Obviously, neither counsel for the City, nor counsel for the airlines, could justify executing a written stipulation if it contained material terms which they assert were engrafted as an afterthought to that which they had agreed upon orally. Clearly, the May 24th telephone conversation, in the context of the entire record, cannot and will not deter us from finding that a stipulation was entered into of record in open court. We hold that counsel did, in fact, enter into a binding agreement at the May 3, 1976 hearing, the terms of which are set forth in the transcript of that hearing; an agreement, moreover, which counsel for the City, with full authority to do so, specifically consented to on at least three occasions during the course of that hearing. The later dispute as to other matters in connection with that stipulation, cannot and will not negate the agreement itself. *Pyle v. Wolf Corporation,* 354 F.Supp. 346 (D.Or.1972).

Specifically, we note the following question put to counsel by us at the May 3, 1976 hearing:

*but aren't you gentlemen in agreement today* that, in effect, pending any final determination by this Court with respect to the issue that Mr. Smolens has raised, that his clients are willing to abide by the financial terms of the Agreement with the understanding that if there is an adverse ruling to him, that, obviously, whatever the consequences are, they would have to be met?

(N.T., May 3, 1976, p. 36) (emphasis supplied).

In response to this inquiry, counsel for the City responded as follows:

I drafted the stipulation, Your Honor, and *that's exactly what was intended.*

(N.T., p. 36) (emphasis supplied). We then asked counsel for the airlines if he could

accept the proposed stipulation. He replied in the affirmative with this qualification:

when Regulation 2 sees the light of day we are going to want to attack that on whatever constitutional or other legal grounds exists

(N.T., p. 37). We asked the City if that addition would pose any problem, and counsel for the City stated the following:

No, Your Honor. I would be most unhappy if Your Honor did not consider Regulation 2 on the trial of the merits because I don't want to give the plaintiffs a chance to have Your Honor rule against them and then come in and say, "Well, Regulation 2 is a different one." . .

(N.T., pp. 37–38).

This colloquy with respect to the stipulation ended with our comment that

I do think that this stipulation should be entered into with, of course, the understanding that, as far as Regulation 2 goes, that each party preserves its own rights or their own rights as to that but, in other words, the stipulation is that pending ultimate determination, payments pursuant to that which Mr. Smolens claims is the Agreement, even though you may dispute that that is a binding agreement upon you, will be paid pending the determination by me in terms of the situation.

(N.T., p. 39). Counsel for the airlines and the City, respectively, responded as follows:

MR. SMOLENS: That's pretty close to the disposition that was made.

MR. REICH: *That's what was intended.*

(N.T., p. 40) (emphasis supplied).

The record conclusively establishes that the parties did, in fact, enter into a stipulation under which, pending our determination of the Motion to Enforce, the City would charge for use of airport facilities in accordance with the agreement at issue, and not under regulation 2; moreover, the parties also agreed that if, and when regulation 2 did become effective the airlines would preserve *all of their rights* to challenge that regulation on whatever legal

grounds may be available, whether constitutional or otherwise.

Disposition of this issue makes it unnecessary to consider the additional argument raised by the airlines and contested by the City; the contention is that the promise of the City to the airlines to enter into a stipulation suspending regulation 2 temporarily, if the airlines would move into their new facilities, rises to the level of a promissory estoppel, which binds the City to its terms, *whether or not they were actually finalized.*

 One final point merits discussion. At oral argument on the issue of the Motion to Suspend on June 25, 1976, counsel for the City stated that, at least for the present, the rates which would be charged under the terms of the alleged agreement are not significantly lower than the rates established by regulation 2. The alleged agreement, however, does not establish specific rates; it sets forth a scheme for calculation of rates; in light of this revelation at oral argument that the calculated rates may in fact be higher than anticipated, it is apparent that disputes may arise in the future as to the propriety of charges made by the City under the disputed settlement agreement. Because that agreement is before us, both in connection with the Motion to Enforce and the Motion to Suspend, we have the power and obligation to resolve any disputes which may arise with respect to the interpretation of that document. At this stage of the litigation, however, since we are, in effect, at the specific request of the airlines, putting the agreement into operation, pending our final determination as to its enforceability, we will not allow the airlines to withhold or delay payments under the agreement, on the basis of disputes as to the interpretation of that instrument. We will therefore require, as a condition of our order in this matter, that pending our disposition of the airlines' Motion to Enforce, they shall not, without our specific prior authorization, delay or withhold any payments under the agreement, on the basis of the alleged incorrectness of the City's billing. The airlines shall have the right,

however, to apply for future credits, should it be determined that any payments made under the accompanying order were, in fact, excessive or improper. Moreover, any disputes as to calculations under the agreement will be promptly resolved by us, once the issue is properly framed, so that neither side will be prejudiced. An appropriate Order will issue.

## INTERIM ORDER

AND NOW, to wit, this 29th day of June, 1976, upon consideration of plaintiffs' Motion to Suspend Defendant's Regulation 2, defendant's answer thereto, the affidavits of the respective parties, and oral argument heard on June 25, 1976, and for the reasons set forth in the accompanying memorandum, IT IS ORDERED that plaintiffs' motion be and it is hereby GRANTED, under and subject to the following terms and conditions:

1. Pending a final determination by this Court of plaintiffs' Motion to Enforce Settlement Agreement all parties shall be bound by the agreement alleged in that motion, (hereinafter referred to as agreement), and defendant shall charge plaintiffs for the use and occupancy of the facilities at the Philadelphia International Airport and the North Philadelphia Airport, (hereinafter referred to as airport facilities) in accordance with rates calculated pursuant to the pertinent provisions of that agreement.

2. Should this Court deny plaintiffs' Motion to Enforce Settlement Agreement defendant shall have the right to enforce its regulations, then applicable, in calculating rates and charges for use and occupancy of the airport facilities by plaintiffs, subject, however, to the right of plaintiffs to challenge those regulations on all grounds, constitutional or otherwise, which plaintiffs deem to be appropriate; moreover, such a challenge or challenges shall be made before this Court only, which shall have continuing jurisdiction over this litigation. Plaintiffs shall have the right to seek immediate injunctive relief and such other relief they deem appropriate.

3. Any disputes which arise during the pendency of this litigation, with respect to the interpretation of the agreement or as to any levies imposed by defendant under the agreement, shall be brought before this Court immediately, and this Court will resolve those disputes forthwith, pursuant to its plenary jurisdiction over the matters at issue in this litigation.

4. Plaintiffs shall not, prior to disposition, by this Court, of plaintiffs' Motion to Enforce Settlement Agreement, delay or withhold payment of any billings made by defendant pursuant to the agreement, on the basis of the alleged incorrectness or invalidity of the billings, except upon the specific authorization of this Court. Plaintiffs, however, shall not be precluded from applying to this Court for a credit with respect to future invoices, should it be determined that payments made pursuant to statements rendered by the City under the provisions of the Agreement were excessive or otherwise improper.

5. Should this Court deny defendant's Motion for Summary Judgment, thereby necessitating a trial on the merits of plaintiffs' Motion to Enforce Settlement Agreement, the issues raised in plaintiffs' motion shall be tried prior to the trial of any other issues raised by the parties, including the issues raised in plaintiffs' complaint; in such event, all discovery shall be limited to those issues which are pertinent to disposition of that phase of the litigation relating to the matters of the settlement agreement.

6. For the purposes of this interim order, all references to "plaintiffs" shall include American Airlines, Inc.; Allegheny Airlines, Inc.; Delta Airlines, Inc.; Eastern Airlines, Inc.; National Airlines, Inc.; Northwest Airlines, Inc.; Pan American World Airways; Trans World Airlines, Inc.; and United Air Lines, Inc., but shall not include Altair Airlines, Inc. References to the "parties" shall include plaintiffs, as defined herein, and the City of Philadelphia, but shall not include Altair Airlines, Inc.

IT IS SO ORDERED.