NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Plaintiff,

v.

EASTERN AIRLINES, INC., United Airlines, Inc., American Airlines, Inc., USAir, Inc., Defendants.

No. Civ–85–1393C.

United States District Court, W.D. New York.

April 21, 1987.

Moot & Sprague (Gary F. Kotaska, of counsel), Buffalo, N.Y., for plaintiff.

Saperston & Day (Frank T. Gaglione and Kenneth W. Africano, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff Niagara Frontier Transportation Authority [NFTA], a public benefit corporation for the State of New York, seeks recovery from four airline companies for breach of lease agreements and failure to pay certain fees levied by plaintiff pursuant to its authority under New York State law. Jurisdiction is based upon diversity of citizenship.

The NFTA was constituted to develop and improve transportation and related services by railroad, bus, marine, and air. NY Public Authorities Law [NYPAL] § 1299–d(1). The NFTA is granted the authority to enter into contracts and leases and to charge such fares, fees, rentals, and other charges as it may deem necessary. NY-PAL § 1299–e, f.

In its 12–count complaint, the NFTA claims that each of the defendant airlines is breaching the lease agreement which entitles them to occupy space and receive other benefits at the Greater Buffalo International Airport. The NFTA also claims that each defendant is paying only a portion of the landing charges levied for their use of the runway, taxiway, and apron space at the airport.

Each defendant, in its amended answer, raised similar affirmative defenses and counterclaims. Plaintiff has moved to strike the affirmative defenses numbered 5, 7, and 8, and to dismiss the second counterclaim of each defendant's amended answer. The defenses and counterclaims at issue are based on the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 2210); the Anti-Head Tax Act (49 U.S.C. § 1513);[1] the Commerce Clause, Article I, § 8, of the United States Constitution; and the Niagara Frontier Transportation Act, §§ 1299, *et seq.*

*1. Airport and Airway Improvement Act*

■ Although defendant airlines had initially urged that they had a private right of action under the Airport and Airway Improvement Act of 1982, this argument was withdrawn by counsel for the airlines at oral argument. Several courts, in persuasive analysis with which this court agrees, have held that there is no private right of action under 49 U.S.C. § 2210. *See Interface Group v. Massachusetts Port Authority,* 816 F.2d 9 (1st Cir.1987), *Arrow Airways, Inc. v. Dade County,* 749 F.2d 1489 (11th Cir.1985), *citing Hill Aircraft and Leasing Corp. v. Fulton County,* 561 F.Supp. 667 (N.D.Ga.1982), *aff'd without opinion,* 729 F.2d 1467 (1984).

The Airport and Airway Improvement Act is removed as a basis for the affirmative defenses and counterclaims.

*2. The Anti-Head Tax Act*

Plaintiff also claims that the Anti-Head Tax Act, 49 U.S.C. § 1513, affords no private right of action to airlines. The Act provides, in relevant part:

(a) No State ... shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom....

■ At the time of argument, only one court had directly addressed the issue of whether the Anti-Head Tax Act provides a private right of action for air carriers, and concluded that it does not. *Interface Group, Inc. v. Massachusetts Port Authority,* 631 F.Supp. 483 (D.Mass.1986). That decision was recently reversed by the United States Court of Appeals for the First Circuit, which concluded that section 1513 impliedly confers a private right of action on air carriers. *Interface, supra. See also Indianapolis Airport Authority v. American Airlines,* 733 F.2d 1262 (7th

---

1. In their original answers, defendants did not raise the Anti-Head Tax Act as a defense or basis for a counterclaim. After plaintiff moved to strike certain defenses and dismiss a counter-claim, defendants were given leave to file amended answers which raised the Anti-Head Tax Act. Plaintiff filed another motion to strike and dismiss, and additional briefs.

Cir.1984), and *Island Aviation, Inc. v. Guam Airport Authority,* 562 F.Supp. 951 (D.Guam 1982), which assumed, without discussion, that airlines have a private right of action under the Act.[2] For the reasons below, I find that there is a private right of action under the Act and deny plaintiff's motion to strike the affirmative defenses and dismiss the counterclaim.

In *Interface,* the First Circuit discussed the traditional test for determining whether a federal statute creates an implied private right of action, as set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 48 L.Ed.2d 26 (1975). Under the *Cort* analysis, four relevant factors are considered: 1) Is the plaintiff one of a class for whose special benefit the statute was enacted? 2) Is there any explicit or implicit indication of a legislative intent to create a private remedy? 3) Is it consistent with the underlying principles of the legislative scheme to imply such a remedy? 4) Is the cause of action traditionally regulated to state law, such that it would be inappropriate to infer a cause of action based solely on federal law? *Id.* at 78, 95 S.Ct. at 2087.

■ Subsequent Supreme Court cases have emphasized the second of these factors—whether Congress intended to create a private right of action—as the central issue. *TransAmerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). All of the *Cort* factors are relevant to this inquiry. *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981).

[T]he first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S. at 78 [95 S.Ct. at 2087]—are ones traditionally relied upon in determining legislative intent.

*Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). *See also Pryor v. United States Steel Corp.,* 794 F.2d 52, 57 (2d Cir.1986).

As for the first *Cort* factor, the Act identifies a class to be protected from the proscribed conduct: not only persons traveling in air commerce, but also those companies who carry persons in air commerce or sell air transportation. It is clear from a reading of the legislative history that the intended beneficiary is primarily air travelers. However, it is equally clear that Congress was aware that the interests of the air-traveling public and the airlines are frequently aligned on this issue. "Whether the passenger pays the head tax, or whether it is absorbed by the airlines, the end result is to raise the cost of air travel." S.Rep. No. 12, 93rd Congress, 1st Session, reprinted in 1973 *U.S. Code Congressional and Admin. News* 1434, 1451. Under these circumstances, it is fair to conclude that airlines receive a "special benefit," although perhaps collaterally, from the Act. *See also Interface,* at p. 16.

The second and third *Cort* factors also weigh in favor of defendants. Congress's intent to create a private cause of action can be inferred from the most significant factor, the directly prohibitive language of subsection (a) of the Act. States and their political subdivisions are prohibited from collecting "tax, fee, head charge or other charge, directly or indirectly...."

The Anti-Head Tax Act is distinguishable from those statutes which neither confer rights on private parties nor proscribe any conduct as unlawful, *Touche Ross, supra,* 442 U.S. at 569, 99 S.Ct. at 2485. In *Touche Ross,* the statute at issue was section 17(a) of the Securities Exchange Act of

---

**2.** In support of their argument for a private right of action, the defendant airlines cite *Aloha Airlines, Inc. v. Director of Taxation of Hawaii,* 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983). There, the airline brought suit challenging a Hawaii statute imposing a tax on the airlines' gross income. The airline claimed that enforcement of the statute violated the Supremacy Clause of the United States Constitution, and sought a refund of taxes it had paid. The Court

held that the Anti-Head Tax Act preempts state statutes imposing taxes on gross receipts derived from air transportation. The Court did not hold that there is a private right of action under the Act. Nonetheless, in the context of the facts of that case, the airline was permitted to raise the prohibitive force of the Act, albeit in the context of preemption, to invalidate a tax imposed by the state.

1934. The Court noted that the section was regulatory in nature, requiring broker-dealers to maintain such records as prescribed by the rules and regulation of the SEC. It did not proscribe any conduct or confer rights on any class.

Similarly, the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 2210, neither directly proscribes any conduct by airport authorities nor affords any rights to a class. It requires the Secretary of Transportation to receive certain written assurances from airport authorities before approving airport development plans. *Hill Aircraft*, 561 F.Supp. at 672. It is forward-looking, in that it seeks to prevent expenditures of federal funds on airports which engage in certain practices. (*See Touche Ross*, 442 U.S. 560, 570, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82).[3]

The language and focus of the statute, which forbids states to impose certain taxes on a defined class, indicate that Congress intended to provide a private cause of action.

Furthermore, providing a private remedy to airlines would advance the purposes of the Act. Congress was aware that if the tax or charge were assessed to the airline, it would, in all probability, be passed on to the airline passengers. In that event, the passenger might not be aware of the tax or, because the amount charged would be low, he might be unwilling to challenge the tax. In such cases, the airlines would be best able to enforce the Act.[4]

The fourth *Cort* factor is also in favor of the defendant airlines, since air transportation and aviation matters are governed by federal law.

Finally, the Anti-Head Tax Act was passed pursuant to Congress's powers under the Commerce Clause. In *Evansville-Vanderburgh Airport v. Delta Airlines*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), two airlines brought an action against airport authorities claiming a head tax, in one case imposed on the airline and in another on the passengers, violated the Commerce Clause. The airlines had standing to bring the action. The Senate Report for the Anti-Head Tax Act cites the *Evansville* case as the impetus for the passage of the Act, *id.* at 1446. It seems unlikely, given all of the above, that Congress intended to revoke the airlines' standing to raise the proscriptions of the Commerce Clause, as codified in the Act.

▇ In the alternative, plaintiff claims that the charges of which the airlines complain do not violate the Act, since they are primarily negotiated rents and other reasonable fees permitted by subsection (b) of the Act, 49 U.S.C. § 1513. The nature of the disputed charges and their reasonableness is best determined on a more fully developed record and is not a basis for dismissal of the defenses and counterclaims at this time.

▇ In addition, plaintiff argues that defendants failed to properly plead a cause of action under the Anti-Head Tax Act in that they failed to allege a detrimental effect on air passengers. However, the language of the amended answers mirrors the language

---

3. Section 1305(a) of the Federal Aviation Act has also been held to provide no private right of action. *Guthrie v. Genesee Co. Airport*, 494 F.Supp. 950 (W.D.N.Y.1980); *Montauk-Caribbean Airways v. Hope*, 784 F.2d 91 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). That section also grants no rights to any class of beneficiaries, nor does it make any specific conduct unlawful. It is part of a statutory scheme to monitor the expenditure of federal funds for the benefit of the general public. *Montauk*, 784 F.2d at 98.

4. As was pointed out by the district court in *Interface*, 631 F.Supp. at 494, there is an enforcement scheme in 49 U.S.C. Chapter 20, in which the Secretary of Transportation handles complaints. This casts some doubt upon Congress's intent to create a private right of action under section 1513 in the courts. 49 U.S.C. § 1482(a) provides that any person with a complaint "with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established thereto," may file a complaint with the Secretary. 49 U.S.C. §§ 1304–1557 are included in Chapter 20—the Federal Aviation Program. Theoretically, then, the airlines could proceed under section 1482. However, there is no indication in section 1513 or in the legislative history that Congress or the history that Congress planned for those aggrieved under section 1513 to go to the Secretary of Transportation with their complaint.

of the Anti-Head Tax Act, subsection (a) (*see* Item 17, ¶¶72 and 85). Considering the alignment of interest between airlines and air travelers, the pleading comports sufficiently with the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Plaintiff's motion to dismiss the affirmative defenses and counterclaims based on the Anti-Head Tax Act are denied.

### 3. The Commerce Clause

The airlines also rely upon the Commerce Clause of the United States Constitution (Art. I, § 8, cl. 3) as a basis for their counterclaims and affirmative defenses. As was noted above, Congress passed the Anti-Head Tax Act in response to the Supreme Court decision in *Evansville-Vanderburgh Airport, supra.* Since that case was brought pursuant to the Commerce Clause, plaintiff urges that the Anti-Head Tax Act has supplanted the Commerce Clause. *See Indianapolis Airport Authority,* 733 F.2d at 1266.

To the extent that the factual basis for defendants' counterclaims under the Anti-Head Tax Act is the same as the basis for defendants' claims under the Commerce Clause, the Commerce Clause claims cannot stand. In addition, the NFTA claims that it is a "market participant," and so is not subject to the restraints of the Commerce Clause in any event. *See Transport Limousine of Long Island v. Port Authority of New York,* 571 F.Supp. 576, 581 (E.D.N.Y.1983). However, since the defenses and counterclaims are not dismissed by this order, the cause of action under the Commerce Clause will be permitted to stand for the present, pending further discovery and development of the record.

### 4. New York Law

Defendant airlines also raise New York Public Authorities Law [NYPAL] § 1299. Under New York law, the NFTA may establish rentals, rates and fees "as it may deem necessary." Section 1299–f(3). Defendants urge the court to imply a reasonableness standard into the statute, claiming that the NFTA is making more money than it needs to run the airport and is using it for non-aviation projects. However, NYPAL § 1299 states that the NFTA, in its judgment, may charge what is necessary to maintain "the combined operations of the authority...." Defendants' reliance on New York law may prove to be misplaced, but will be permitted to stand, pending further development of the record.

As an alternative ground, plaintiff claims that the airlines failed to file a notice of claim with the NFTA, as required by NYPAL § 1299–p. Assuming that section 1299–p, which by its terms applies to suits founded in tort, is applicable here, defendants' failure to file a notice of claim does not bar it from asserting its counterclaims. The purpose of section 1299–p is both to give notice and to permit the NFTA to attempt to resolve disputes. Since the NFTA itself brought this action, defendants' failure to file a notice of claim is not a bar.

Defendants' reliance on the Airport and Airway Improvement Act as a basis for their affirmative defenses and counterclaims is withdrawn. Plaintiff's motion to strike the defenses and counterclaims to the extent that they are based on the Anti-Head Tax Act is denied, and the motion to dismiss to the extent the defenses and counterclaims are based on the Commerce Clause and New York law is denied for the present. The court understands that discovery is proceeding. A status meeting will be held May 7, 1987, at 9 a.m.

So ordered.