**ROCKY MOUNTAIN AIRWAYS, INC. a California corporation, and Aspen Airways, Inc., a Colorado corporation, Plaintiffs,**

v.

**The COUNTY OF PITKIN, a political subdivision of the State of Colorado; George Madsen, Colette Penne, Fred Crowley, Tom Blake, and Bob Child, members of the Board of County Commissioners of Pitkin County, Defendants.**

Civ. A. No. 87–A–1603.

United States District Court, D. Colorado.

Nov. 25, 1987.

Thomas Fenton Smith, Pitkin Co. Atty., Timothy E. Whitsitt, Asst. Pitkin Co. Atty., Aspen, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

Plaintiffs, Rocky Mountain Airways, Inc. and Aspen Airways, Inc. (the "Airlines") have filed a complaint in this court alleging that certain rates and charges imposed upon them under a resolution adopted by the Pitkin County Board of County Commissioners ("BOCC") are excessive, unreasonable, and discriminatory in violation of both federal and state law. The matter is now before the court on defendants' motion to dismiss the complaint. The parties have submitted briefs and other documentation in support of their respective positions, and oral argument was heard on November 19, 1987.

## ALLEGATIONS IN THE COMPLAINT[1]

Defendant Pitkin County (the "County") is a political subdivision of the State of Colorado which owns and operates the Aspen/Pitkin County Airport (the "Airport"). The Airport serves the seasonal resort and year-round business needs of the several communities of Pitkin County, including the City of Aspen and the Town of Snowmass Village. It is the only public airport within approximately 80 miles of Aspen that can accommodate commercial flights of the nature performed by the Airlines.

The plaintiffs in this case each operate air carrier services between Stapleton International Airport, in Denver, and the Aspen/Pitkin County Airport. They are the only regularly scheduled commercial airlines who fly into the Airport. Both of the Airlines occupy terminal space and utilize airfield facilities pursuant to Use and Lease Agreements with Pitkin County.

The County has made a decision to enlarge and remodel the existing terminal at

Frances A. Koncilja, Claire E. Holmes, Morrison & Foerster, Denver, Colo., Harold J. McElhinny, Morrison & Foerster, San Francisco, Cal., for plaintiffs.

1. For purposes of this motion to dismiss for failure to state a claim, the material allegations of the complaint are to be taken as true. *Jenkins v. McKiethen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Bryan v. Stillwater Bd. of Realtors,* 578 F.2d 1319, 1321 (10th Cir.1977).

the Airport. The new budget calls for total construction costs of $2,444,198, of which $866,809 is to come from federal grants, $1,342,000 is to be generated from the net proceeds of a new bond issue, and $215,389 is to be paid from operating revenues. In an effort to generate the necessary operating revenues, the BOCC adopted Resolution No. 87–56 on September 14, 1987. This resolution provides that the landing fees for regularly scheduled commercial airlines will be increased from $.65 to $.99 per 1000 pounds of maximum allowable gross landing weight (an increase of 52.3%). It also provides that annual rental charges for the terminal space occupied by the airlines will be increased from $233,417 to $564,488 (an increase of 153%).

The Airlines contend that they only account for 28.7% of annual operations at the Airport.[2] Yet, under Resolution No. 87–56, the rental and landing fees paid by the Airlines will amount to 50.6% of all operating revenues in 1988. In contrast, General Aviation (privately owned aircraft), which generates neither terminal rent nor landing fees, allegedly accounts for 67.7% of annual operations.[3] The County does generate revenue from General Aviation, but it does so indirectly by charging a rental fee to the Fixed Base Operator. The Operator provides services to private aircraft and thereby passes on the cost. Under Resolution No. 87–56, such indirect revenues paid by General Aviation will only amount of 14.7% of the annual operating revenues in 1988.

The Complaint alleges five separate claims for relief. The first claim alleges that the fees and rentals imposed upon the Airlines under Resolution No. 87–56 are unreasonable and, therefore, in violation of the federal Anti–Head Tax Act, 49 U.S.C. § 1513. The second claim asserts that the Airport holds a monopoly position, and that the fees and rentals are unreasonable and therefore in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. The third claim is based upon the allegation that the fees and rentals being imposed by the County are discriminatory and therefore

deprive the Airlines of their rights under 49 U.S.C. § 2210. The Airlines charge that this alleged discriminatory violation of their rights under federal law gives rise to a cause of action under 42 U.S.C. § 1983. The fourth claim asserts that 49 U.S.C. § 1513 and 49 U.S.C. § 2210 indicate that federal law now preempts the kind of state and local regulation at issue in this case, and that the fees and rentals being imposed are therefore invalid under the supremacy clause of the United States Constitution, U.S.Const. Art. VI, cl. 2. Finally, the fifth claim asserts that the County's power to charge and collect rentals and fees in connection with the maintenance and operation of the Airport pursuant to Colo.Rev.Stat. § 41–4–106 is limited to rentals and fees that are reasonable. The Airport maintains that the fees and rentals in this case are not reasonable and are therefore in violation of Colo.Rev.Stat. § 41–4–106.

The County has moved to dismiss all five claims for relief. The court will address each of these claims in turn.

## DISCUSSION

For purposes of a motion to dismiss for failure to state a claim, the material allegations of the complaint are to be taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Bryan v. Stillwater Bd. of Realtors,* 578 F.2d 1319, 1321 (10th Cir.1977). The complaint should be liberally construed in favor of the plaintiff. It is "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### I. *The First Claim for Relief*

■ The first claim for relief in the Complaint alleges that the fees and rental charges imposed upon the airlines constitutes a violation of the Anti–Head Tax Act,

---

**2.** Operations defined as flights into or out of the Airport.

**3.** The remainder of the Airport's operations, 3.6%, are attributable to charters.

49 U.S.C. § 1513. A two-step analysis is necessary to determine whether this cause of action should survive defendants' motion to dismiss. First, the facts alleged, taken as true, must indicate that the County's actions constitute a violation of this provision. Second, an implied private right of action for such a violation must be recognized.

With regard to the first question, 49 U.S.C. § 1513 provides, in relevant part, that

(a) No State (or political subdivision thereof ...) shall levy or collect a tax, fee, head charge, or other charge, *directly or indirectly*, on *persons* traveling in air commerce or on the *carriage of persons* traveling in air commerce or on the *sale* of air transportation or on the *gross receipts* derived therefrom ... (emphasis added).

(b) [N]othing in this section shall prohibit a state (or political subdivision thereof ...) from the levy or collection of ... property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a state (or political subdivision thereof ...) owning or operating an airport from levying or collecting *reasonable rental charges, landing fees*, and other service charges from aircraft operators ... (emphasis added).

Thus, Section 1513(a) is a broadly-worded prohibition of any kind of indirect charge on the carrying of persons in air commerce.[4] Section 1513(b) then lays out certain exceptions to this broad prohibition. Property taxes, sales taxes, income taxes, and franchise taxes are clearly allowed.

Additionally, airports may impose rental charges, service charges, and landing fees, but only so long as such charges are reasonable.

In the present case, the fees and rentals complained of clearly seem to make out a violation of subsection (a) of 49 U.S.C. § 1513. Since the landing fee is based upon gross weight, a figure which must bear some relation to the number of passengers in the airplane, this fee arguably amounts to an indirect head-tax. Moreover, the terminal rental fee, which is ultimately passed on to air travelers in the form of higher fares, constitutes an indirect charge on persons traveling in air commerce. In any event, both charges are clearly a type of indirect charge on the carrying of persons in air commerce.

The County responds that the fees and rentals at issue are merely "reasonable rental charges and landing fees" and are therefore protected under the terms of subsection (b) of 49 U.S.C. § 1513. Such a response, however, overlooks the fact that the allegations in the complaint are to be taken as true in considering a motion to dismiss. Since the airlines have alleged that the fees and rentals being imposed are *unreasonable*, the complaint sufficiently alleges a violation of 49 U.S.C. § 1513. The "reasonableness" of the charges will remain as an issue to be determined by the trier of fact. *Accord, Niagara Frontier Transp. Authority v. Eastern Airlines, Inc.,* 658 F.Supp. 247 (W.D.N.Y.1987).[5]

With regard to the second step in the analysis, it is important to note that every court expressly considering the issue has held that there is an implied private right

---

4. 49 U.S.C. § 1513 was enacted by Congress partially in reaction to *Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972) in which the Supreme Court upheld the imposition of a state "head tax." Specifically, the Court held constitutional a charge of one dollar for each passenger aboard any commercial aircraft. However, the statutory language chosen by Congress, which is the best evidence of its intent, is not so limited in scope, and clearly encompasses and prohibits more than the type of head tax which was the subject of the *Evansville* decision.

5. In *Niagara Frontier*, the airlines claimed certain charges being imposed upon them were in violation of Section 1513(a), and the airport transportation authority argued in its defense that the charges were merely rent and other reasonable fees allowed under Section 1513(b). The court denied the transportation authority's motion to dismiss, stating that "[t]he nature of the disputed charges and their reasonableness is best determined on a more fully developed record and is not a basis for dismissal ... at this time." *Niagara Frontier,* 658 F.Supp. at 251.

of action under 49 U.S.C. § 1513. *Interface Group, Inc. v. Massachusetts Port Authority,* 816 F.2d 9 (1st Cir.1987); *Niagara Frontier Transp. Authority v. Eastern Airlines, Inc.,* 658 F.Supp. 247 (W.D. N.Y.1987). These courts correctly rest their conclusion upon the analysis set forth by the United States Supreme Court in the case of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny. Additionally, there are a number of other cases in which a private cause of action under this provision has been assumed without discussion. *Eg., Indianapolis Airport Authority v. American Airlines, Inc.,* 733 F.2d 1262 (7th Cir.1984); *American Airlines, Inc. v. City of Philadelphia,* 414 F.Supp. 1226 (E.D.Pa.1976). These authorities substantially convince this court that an implied private right of action is properly recognized for violations of 49 U.S.C. § 1513. Accordingly, defendants' motion to dismiss, with respect to the first claim for relief, will be denied.

## II. *The Second Claim for Relief*

■ The second claim for relief in the complaint alleges that the airport occupies a monopoly position and that the fees and rental charges imposed under Resolution No. 87–56 amount to a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. The County has moved to dismiss this cause of action on the theory that it is performing a governmental (rather than proprietary) function in operating the airport, and that it is therefore immune from antitrust liability under the state immunity doctrine.

The United States Court of Appeals for the Tenth Circuit has already considered and ruled upon essentially this very issue in the case of *Pueblo Aircraft Service, Inc. v. City of Pueblo,* 679 F.2d 805 (10th Cir. 1982). In that case, a fixed base operator at the municipal airport owned and operated by the City of Pueblo brought suit against the city claiming violations of the Sherman Act. The City moved for dismissal under the state immunity doctrine. The Tenth Circuit affirmed the trial court's dismissal of the action, holding that municipalities in Colorado are immune from the federal antitrust laws when they operate a local airport. *Id.*

In *Pueblo Aircraft,* the Tenth Circuit based its discussion on *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), wherein

> the Supreme Court made it clear that a municipality is not exempt from the antitrust laws unless it constitutes the action of the state itself or was municipal action in furtherance or implementation of state policy by means of a "clear articulation and affirmative expression" contemplating a municipality's anticompetitive program. *Pueblo Aircraft,* 679 F.2d at 808.

The court then noted that the Colorado legislature has expressly declared the operation of airport facilities "... to be public governmental functions, exercised for a public purpose, and matters of public necessity...." Colo.Rev.Stat. § 41–4–101. It found that a municipality operating in its "governmental capacity" acts as an arm of the state and on behalf of the state rather than on its own behalf. *Pueblo Aircraft,* 679 F.2d at 810. As a result, it concluded that "the State of Colorado by affirmative legislative action granted [municipalities] an exemption from operation of federal antitrust laws by virtue of the statutory language contained in C.R.S. 1973, § 41–4–101, *supra.*" *Pueblo Aircraft,* 679 F.2d at 809. *Accord Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986) (result of legislatively declared state policy that municipal airport operators could enter into exclusive lease agreements was that injunctive relief against town under the Sherman Act was precluded by the State Immunity doctrine).

In the present case, Colo.Rev.Stat. § 41–4–101, by its own terms, applies not only to municipal airports, but also to airports owned and operated by a county. As a result, Pitkin County is undeniably acting in its governmental (rather than proprietary) capacity and, like the city of Pueblo, is immune from the operation of the federal antitrust laws. Accordingly, defendants'

motion to dismiss, with respect to the second claim for relief, will be granted.

## III. *The Third Claim for Relief*

■ Plaintiffs' third claim for relief alleges that the charges being imposed under Resolution No. 87–56 amount to a violation of 49 U.S.C. § 2210. The County moves to dismiss this claim on the theory that an implied private right of action is not recognized for violations of Section 2210. While the County's position appears to be settled law,[6] the Airlines in this case are not asserting an implied private right of action under Section 2210. Rather, they contend that the alleged violation of Section 2210 gives rise to a cause of action under 42 U.S.C. § 1983.

Section 2210 essentially provides that any airport receiving federal assistance for an airport development project must provide the Secretary of Transportation with written assurances that the airport "will be available for public use on fair and reasonable terms and without unjust discrimination...." Section 1983 gives a cause of action to every person within the jurisdiction of the United States who, under color of state regulation, is deprived of any rights secured by "the Constitution and laws" of the United States. The airlines allege that the new fees and rental charges are unreasonable and discriminatory "because they discriminate against the Airlines in favor of General Aviation."[7] As a result, they assert that they are being deprived of rights secured to them under the laws of the United States and can therefore bring suit under Section 1983.

Although a number of cases address the issue of an implied private right of action under Section 2210, few courts have considered the specific cause of action advanced by the Airlines in this case. While at least one district court has recognized a private right of action under 42 U.S.C. § 1983 for violations of the standards set forth at 49 U.S.C. § 2210, *New York Airlines, Inc. v. Dukes County*, 623 F.Supp. 1435 (D.Mass.1985), another district court has refused to do so, *Hillman Flying Service, Inc. v. City of Roanoke*, 652 F.Supp. 1142 (W.D.Va.1987). These two courts also drew strikingly dissimilar conclusions as to the Congressional intent behind Section 2210. While the *New York Airlines* court found that air carriers were the special class Congress intended to benefit when it enacted Section 2210, the *Hillman* court concluded that Congress never intended to confer any right that could be enforced through Section 1983. *New York Airlines*, 623 F.Supp. at 1447; *Hillman Flying*, 652 F.Supp. at 1149.

Earlier this year, the Second Circuit reaffirmed its ruling that 49 U.S.C. §§ 1305(a) and 1349(a) could not be enforced through 42 U.S.C. § 1983. *Western Airlines*, 817 F.2d at 222. Noting the *New York Airlines* decision above, however, it stated that it did not need to reach the question of whether there was a persuasive reason for reaching a different conclusion with respect to Section 2210. *Id.*, at 225.

Section 1983 provides a cause of action to any person who, under color of law, is deprived of any right secured by the Constitution *and laws* of the United States. 42 U.S.C. § 1983. As a result, the Supreme Court has clearly held that a violation of a federal *statute* can give rise to a cause of action under Section 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed. 2d 555 (1980). Moreover, the phrase "and laws" is not to be read as limited to civil rights or equal protection laws, but rather should be construed to include all manner of federal statutes. *Id.*, at 6–8, 100 S.Ct. at 2505–2506.

Although Section 1983 encompasses more than merely civil rights and equal protection statutes, however, not every federal statute is privately enforceable via Section 1983. Specifically, a federal statute does not provide a private right of

---

**6.** *Eg., Arrow Airways, Inc. v. Dade County,* 749 F.2d 1489 (11th Cir.1985); *Interface Group, Inc. v. Massachusetts Port Authority,* 631 F.Supp. 483 (D.Mass.1986), *modified,* 816 F.2d 9 (1st Cir. 1987); *Western Air Lines, Inc. v. Port Authority of New York and New Jersey,* 817 F.2d 222 (2d Cir.1987); *Niagara Frontier,* 658 F.Supp. at 249.

**7.** Plaintiffs' memorandum brief at 8.

action enforceable under Section 1983 if either (1) Congress foreclosed private enforcement when it enacted the statute, or (2) the statute is not of "the kind" that creates enforceable rights under Section 1983. *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). With regard to the former, Congress will be found to have foreclosed a § 1983 remedy when the federal statute itself provides other remedial devices or creates its own comprehensive enforcement scheme. *Middlesex County*, 453 U.S. at 19–20, 101 S.Ct. at 2512–2513.

With regard to the latter, the Supreme Court has given little guidance as to the relevant criteria to be employed in determining whether a federal statute is of "the kind" that creates rights enforceable under Section 1983. In *Thiboutot*, it held that a statute giving certain classes of persons a right to federal welfare benefits did create a right enforceable under Section 1983. In *Pennhurst*, however, it distinguished the statute in *Thiboutot* from the kind of statute which disburses federal funds to states upon condition that the state provide adequate "assurances" of some sort to the federal government. According to the court:

> respondents here, unlike the plaintiffs in *Thiboutot*, who alleged that state law prevented them from receiving federal funds to which they were entitled, can only claim that the state plan has not provided adequate "assurances" to the Secretary. It is at least an open question as to whether an individual's interest in having a state provide those "assurances" is a "right secured" by the laws of the United States within the meaning of § 1983. *Pennhurst*, 451 U.S. at 28, [101 S.Ct. at 1545.]

Additionally, it noted that the typical remedy for state noncompliance with such federally imposed conditions is not a private cause of action for noncompliance, but rather action by the federal government to terminate the payment of funds to the state. *Id.*, at 28, 101 S.Ct. at 1545.

The Supreme Court in *Pennhurst* did not reach the question of whether the statute in that case gave rise to a cause of action under Section 1983. *Pennhurst*, 451 U.S. at 28, n. 21, 101 S.Ct. at 1545 n. 21. However, its discussion of the issue, and the fact that it even chose to note the distinction at all, substantially convince this court that a statute requiring "assurances" before federal funds are advanced to a state or local government is not "the kind" of statute which creates a right enforceable under Section 1983. As noted above, 49 U.S.C. § 2210 merely provides that the Secretary of Transportation must receive written "assurances" from an airport that certain standards and requirements will be met before federal funds may be advanced for an airport development project. As such, it clearly falls within the class of statutes referred to by the Supreme Court in *Pennhurst*. Therefore, since 49 U.S.C. § 2210 is not "the kind" of statute that creates rights enforceable under 42 U.S.C. § 1983, defendants' motion to dismiss, with respect to the third claim for relief, will be granted.

## IV. *The Fourth Claim for Relief*

The Airlines' fourth claim for relief alleges that Resolution No. 87–56 is invalid because it is in violation of the Supremacy Clause of the United States Constitution, U.S.Const. art VI. cl. 2. The airlines contend that 49 U.S.C. §§ 1513 and 2210 evidence the intention of Congress to preempt state and local regulation of airport rental and landing fees. Defendants dispute this contention directly, and argue that these statutes do not indicate federal preemption of the kind of local regulation at issue in this case.

 As an initial matter, it must be noted that there is an important distinction in the law between an implied private right of action for violation of a federal statute and a supremacy clause claim; between holding a state law invalid because it is in direct conflict with and violates a federal law and holding it invalid because the en-

tire field of regulation it addresses has been preempted by Congress. *Western Air Lines, Inc. v. Port Authority of New York and New Jersey*, 817 F.2d 222, 225 (2d Cir.1987) ("A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for the enforcement of that federal law."); *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir.1983). In the former, the allegation is that states *may* regulate in a particular subject-area so long as they don't violate federal law. In the latter, however, the claim is that states *may not* regulate in a particular subject-area at all. Thus, the conclusions reached above as to whether Sections 1513 or 2210 give rise to an implied private right of action have no effect on a ruling as to whether those provisions preempt state and local regulation. *See Western Air Lines*, 817 F.2d at 225 (the fact that 49 U.S.C. § 1305 was held not to create an implied private right of action does not mean that it might not preempt a local regulation on supremacy clause grounds); *Pirolo*, 711 F.2d at 1013 (even though two municipal airport ordinances were preempted by federal law and were therefore invalid, claimant did not thereby have a claim for damages under 42 U.S.C. § 1983).

■ Certain kinds of airport regulation are undeniably the exclusive province of the federal government. For example, 49 U.S.C. § 1308 expressly preempts state or local regulation of air carrier rates, routes, or services. *Western Air Lines*, 817 F.2d at 222; *New York Air Lines*, 623 F.Supp. at 1435. Similarly, the pervasive nature of federal regulation indicates a Congressional decision to give the F.A.A. and the E.P.A. exclusive control over aircraft noise, preempting state and local control. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

In recent decisions the Supreme Court has refused either to presume or infer the intent to preempt state regulation. J. Nowak, R. Rotunda, J. Young, *Constitutional Law* Ch. 10, § I (2d ed. 1983). Rather, the Court now requires that Congress manifest such an intention clearly. *Id.* According to the Court:

> It will not be presumed that a federal statute was intended to supercede the exercise of the power of the state unless there is a clear manifestation [by Congress] of intention to do so. The exercise of federal supremacy is not lightly to be presumed. *New York Dep't of Social Services v. Dublino*, 413 U.S. 405, 413 [93 S.Ct. 2507, 2513, 37 L.Ed.2d 688] (1973), quoting *Schwartz v. Texas*, 344 U.S. 199, 202–03 [73 S.Ct. 232, 234–35, 97 L.Ed. 231] (1952).

If the statute does not expressly provide that federal law does or does not preempt state law, such an intention may be clear from the pervasiveness of the federal regulatory scheme, the need for national uniformity, or the danger of conflict between the enforcement of state laws and the administration of federal programs. *Pennsylvania v. Nelson*, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); *Constitutional Law, supra*, Ch. 10, § I, and cases cited therein.

Interestingly, the United States Supreme Court considered the issue of federal preemption under 49 U.S.C. § 1513 in *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986). In that case, Wardair had argued that § 1513(a) indicated the intent of Congress to preempt the ability of states and local governments to enact a sales tax on aviation fuel. The Supreme Court rejected this contention, concluding that the language of § 1513(b) indicated Congress intended just the opposite result. The Court based its decision on the fact that § 1513(b) expressly reserves to the states the power to enact "sales or use taxes on the sale of goods or services." *Id.*, 106 S.Ct. at 2372. Like the fee being assessed in *Wardair*, state and local terminal rental and landing fees are also expressly allowed under § 1513(b). *See* 49 U.S.C. § 1513.

In the present case, the statutes relied upon by the Airlines cannot by any stretch be said to manifest a Congressional intent to preempt the kind of regulation at issue

in this case. Rather, these very provisions manifest a clear Congressional intent *not* to preempt state and local regulation of terminal rental and landing fees. 49 U.S.C. § 1513(b) expressly provides that states and other political subdivisions which own or operate airports *may continue* to levy and collect rental charges and landing fees.[8] In light of this clear and unmistakable manifestation of Congressional intention, an allegation that Congress intended to preempt local airport regulation of these very matters simply cannot stand. Accordingly, defendants' motion to dismiss, with respect to the fourth claim for relief, will be granted.

### V. *The Fifth Claim for Relief*

■ Plaintiff's fifth claim for relief alleges a violation of Colo.Rev.Stat. § 41–4–106. Specifically, the Airlines assert that even though this provision empowers a county operating an airport to exact charges, fees, and tolls, such power is subject to the constraints imposed by federal law (namely, 49 U.S.C. § 1513) that any charges imposed be reasonable. That is, they claim that unreasonable fees and charges violate Colo.Rev.Stat. § 41–4–106, even though the language chosen by the General Assembly makes no reference to "reasonableness." Thus, since they have generally alleged that the new charges being imposed by Pitkin County are unreasonable, they claim that such charges violate Colo.Rev.Stat. § 41–4–106.

Defendants have moved to dismiss the fifth claim on the theory that, if the federal claims are dismissed, this court has no jurisdiction to hear this state law claim. Although such an assertion is undeniably the law, not all of the federal claims are being dismissed at this time. Thus, the question of whether this court has the power to adjudicate the fifth claim is controlled by the doctrine of pendent jurisdiction.

Under the doctrine of pendent jurisdiction, a District Court has the power to hear a claim arising under state law if two conditions are satisfied. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). First, the plaintiff must present a substantial federal claim. Second, the "state and federal claims must derive from a common nucleus of operative fact." *Id.*, at 725, 86 S.Ct. at 1138. If these conditions are satisfied, the district court then has the power to adjudicate the state claim. However, the exercise of that power remains within the court's discretion. *Id.*

In the present case, I find that plaintiffs' first claim for relief, which claim is brought under provisions of the United States Code, presents a substantial federal question. Additionally, there can be no argument but that the first and fifth claim arise from a common nucleus of operative fact; namely, the facts and events surrounding the enactment by Pitkin County of Resolution No. 87–56. Both claims present precisely the same issue—that is, whether the new rates and fees are reasonable—and both concern the very same evidence. These factors, as well as considerations of fairness, judicial economy, and convenience to the parties, convince this court that the claim for violation of Colo.Rev. Stat. § 41–4–106 should be resolved in the same forum and at the same time as the claim for violation of 49 U.S.C. § 1513. Accordingly, the defendants' motion to dismiss, with respect to the fifth claim for relief, will be denied.

### CONCLUSION

Accordingly,

IT IS ORDERED that defendants' motion to dismiss the first and fifth claims for relief be, and the same hereby is, DENIED;

IT IS FURTHER ORDERED that defendants' motion to dismiss the second,

---

8. "[N]othing in [Section 1513] shall prohibit a State (or political subdivision thereof ...) owning or operating an airport from levying and collecting reasonable rental charges, landing fees...." 49 U.S.C. § 1513(b). Thus, it cannot be said that Congress intended that only the federal government be permitted to enact rea-

sonable rental and landing fees. Moreover, plaintiffs' charges that the rates in this case are unreasonable cannot change this result, since it would be ludicrous to assert that Congress intended that only the federal government be permitted to enact unreasonable rental and landing fees.

third, and fourth claims for relief be, and the same hereby is, GRANTED.