O'CONNELL MANAGEMENT COMPANY, INC., Resorts Aviation, Inc. and George P. Tuttle, Plaintiffs,

v.

MASSACHUSETTS PORT AUTHORITY, Defendant.

Civ. A. No. 90–10908–MA.

United States District Court, D. Massachusetts.

Aug. 8, 1990.

Richard J. Innis, James C. Burling, Hale & Dorr, Boston, Mass., Raymond J. Rasenberger, Frank J. Costello, Richard P. Schweitzer, Zuckert, Scoutt & Rasenberger, Washington, D.C., for plaintiffs.

George Marshall Moriarty, Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action comes before me on defendant's motion to dismiss both for lack of jurisdiction over the subject matter of the complaint and for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(1) and 12(b)(6). The plaintiffs, O'Connell Management Company, Inc., Re-

sorts Aviation, Inc.—both Massachusetts companies—and George P. Tuttle ("plaintiffs") have filed a four count class action suit against the Massachusetts Port Authority ("Massport"). This suit is the sequel to a complicated legal battle fought between the parties along with others two years ago. To fully understand the legal and factual context of the instant dispute, a review of the previous proceedings is in order. A more complete exposition of these events may be found in the decision of the First Circuit Court of Appeals in *New England Legal Foundation v. Massachusetts Port Authority*, 883 F.2d 157 (1st Cir.1989) (*"NELF"*).

On March 16, 1988, Massport announced that it was implementing new landing fees for aircraft landing at Logan airport in Boston, Massachusetts ("Logan"). The effect of these new fees was to raise the cost of landing at Logan, particularly for small aircraft. Collection of the new fees was to commence July 1, 1988. Shortly after this announcement, several affected parties filed a complaint before the Federal Aviation Administration ("FAA"), a division of the Department of Transportation ("DOT"), protesting Massport's plan. On April 15, the New England Legal Foundation ("NELF"), along with several other groups, filed an action before this court, seeking declaratory and injunctive relief. The gist of the complaints was that the new fees violated federal constitutional and statutory law. Relief was sought under the statutes themselves and the Civil Rights Act, as well as the Commerce Clause and the Fourteenth Amendment to the United States Constitution.

On May 20, the Secretary of the DOT (the "Secretary") announced that reasonable grounds existed to warrant a full scale investigation into plaintiffs' claims. She requested that Massport delay implementation of the fee plan until the investigation was complete. This request was denied. On June 28, the DOT filed an *amicus curiae* appearance in this court, urging that any decision about the validity of the fee plan be stayed pending completion of its investigation.

On June 29, 1988, I conducted a hearing concerning the various motions before me. Ruling from the bench, I denied the DOT's request for a stay. I further ruled that the fee plan was a valid exercise of Massport's authority and that plaintiffs' claims brought under statutory and constitutional law were without merit. *See NELF*, 883 F.2d 160–63. On December 22, 1988, the Secretary adopted the findings of the Administrative Law Judge and ruled that the fee structure was invalid. *Id.* at 165. These two proceedings were appealed and the Court of Appeals consolidated them into one case. *Id.* at 167. As will be explained more fully below, the court affirmed the findings of the Secretary as to the invalidity of the fee plan. It affirmed my ruling as to the claims made pursuant to certain statutes but reversed my other findings. *Id.* at 176.

In the wake of the First Circuit's ruling, plaintiffs have filed the instant action to recover money which was appropriated from them pursuant to the invalid fee plan. Specifically, they want the difference between the fees they were paying prior to July 1, 1988 and the fees charged from July 1 to December 27, 1988, the date Massport rescinded the plan, for each time they landed at Logan. They allege their action arises from the Due Process Clause of the Fourteenth Amendment, the Supremacy Clause of the Constitution—Article VI, clause ___, § 511 of the Airway and Airport Improvement Act of 1982, 49 U.S.C.App. § 2210, §§ 105 and 307 of the Federal Aviation Act of 1958, 49 U.S.C.App. §§ 1305 and 1348, respectively,[1] 42 U.S.C. § 1983 and Article X of the Declaration of Rights of the Massachusetts Constitution as well as general common law principles.

■■■ It is the general practice that when a district court is presented with motions brought under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6), the 12(b)(1) motion, which relates to the court's subject matter jurisdiction, should be addressed first, particularly when that motion essentially challenges the existence of a federal cause of action. *Jones v. State of Georgia*, 725 F.2d 622, 623 (11th Cir.), *cert. denied* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 316 (1984); *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (perm. ed. 1990). For most of the issues presented in this action, the inquiries are identical.[2] I will therefore consider them together being mindful that subject matter jurisdiction is a threshold requirement which must be satisfied before a decision on the substantive merits presented by a 12(b)(6) motion can be considered.

In its motion to dismiss, Massport makes three basic arguments. First, it contends that the aviation statutes upon which plaintiffs predicate their claims do not provide a private right of action. Second, it argues that 42 U.S.C. § 1983 does not provide a remedy for a violation of the aviation statutes. Third, it asserts that no cause of action exists under the Constitution.

Turning to the specifics of each argument, Massport claims first that § 511 of the Airway and Airport Improvement Act of 1982, 49 U.S.C.App. § 2210, does not provide a private right of action.[3] It bases this assertion upon what it considers to be unequivocal First Circuit precedent. Plaintiffs do not contest this argument in their memorandum in opposition to dismissal. Accordingly, Massport is entitled to dismissal as to this portion of plaintiffs' complaint. I note for the record that First Circuit case law, indeed, unequivocally supports Massport's argument. *NELF*, 883 F.2d at 168–69; *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 15 (1st Cir.1987).

■■■ Massport next argues that § 105 of the Federal Aviation Act of 1958, 49 U.S.C. App. § 1305 likewise does not provide for a

---

1. These three statutes will sometimes be referred to as the "aviation statutes".

2. The effects are not, however. *See Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987).

3. Section 2210 deals with the assurances the Secretary must receive before he approves any airport improvement project.

private right of action.[4] It claims that there is no indication in the congressional history of the provision that Congress intended to provide a private right of action. It rests this argument on language in cases from the Second and Ninth Circuits as well as a case from this court.

In response, plaintiffs argue that the First Circuit ruled in *NELF* that a private right of action did exist under § 105. They point to a footnote in the opinion which states in relevant part:

> Although there is, in our opinion, a serious question whether a private cause of action exists under § 105 ... this issue was neither argued below nor raised before us. The district court, relying on ... *a pre–1978 Deregulation Act case, assumed that there was a private right to suit and decided the § 105 issues on the merits. We shall follow suit.*

*NELF,* 883 F.2d at 171 n. 25 (emphasis added by plaintiffs).

In my judgment, § 105 does not provide a private right of action. Two factors inform this conclusion. First, Massport has cited cases which support its position. In *New York Airlines, Inc. v. Dukes County,* 623 F.Supp. 1435 (D.Mass.1985), this court was presented with the question of whether § 105 created a federal right enforceable under 42 U.S.C. § 1983.[5] In concluding that no such right was created, the court stated: "As the court has decided that ... § 1305 [does not] create rights enforceable by plaintiff under 42 U.S.C. § 1983, it follows that there is no private right of action created by those provisions alone." *Id.* at 1450 n. 13. The law in other circuits is in accord with the district court's conclusion. In *Air Transport Association of America v. Public Utilities Commission,* 833 F.2d 200, 207 (9th Cir.1987), *cert. denied* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988), the court determined that no private right of action existed under § 105 stating that the "requisite indicia is lacking in the legislative history of the statute that Congress intended to create a private right of action or remedy under the statute." Sim-

ilarly, in *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91 (2nd Cir.), *cert. denied* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), the court succinctly stated that the statute offered no private right of action.

> Section 1305(a) of the Federal Aviation Act is a preemption statute which establishes the federal government's sphere of power over the states in areas of interstate air transportation. There is nothing to suggest that Congress intended to create an implied right of action under that statute.

*Id.* at 97.

The second factor informing my conclusion is that a careful reading of the court's opinion in *NELF* reveals that it did not hold that a private right of action existed under § 105. One of the central concerns voiced by the court was the fact that two contrary adjudications over the same controversy had been rendered by different tribunals. *NELF,* 883 F.2d at 171. Having consolidated the appeals from these decisions, the court resolved the dilemma by concluding that·

> the district court committed error, not only in its decision, but also in not deferring to the Secretary's primary jurisdiction over this controversy as was requested by the DOT in its last minute *amicus* intercession.

*Id.* at 171.

The court went on to explain that well settled First Circuit law mandated that when a district court and a competent administrative agency both have the power to decide the same action, the doctrine of "primary jurisdiction" requires that the district court defer to the administrative proceeding. *Id.* at 171 (citing *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 580 n. 1 (1st Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). After determining that the DOT was the agency in which primary jurisdiction was properly vested, the court reiterated its conclusion that "the district court erred in not defer-

---

**4.** Section 105 deals with the pre-emption of state and local law by federal law in this field.

**5.** This very inquiry will be made in this case. *See infra.*

ring to the DOT the primary jurisdiction to interpret § 105 of the Federal Aviation Act and the issues raised in these cases thereunder." *NELF,* 883 F.2d at 173.

In my judgment, the Court of Appeals ruled that the doctrine of primary jurisdiction precluded me from reaching the merits of the § 105 claim. Consequently, any rulings I made about that claim were negated, not affirmed, by the court. It affirmed the Secretary's analysis of § 105, an analysis which apparently did not involve questions of private remedies. The court therefore did not determine that a private right of action existed under § 105 because it was not necessary to reach that issue. I believe that footnote 25, upon which plaintiffs rely heavily, supports this conclusion. The court clearly indicated its reservations about whether the statute provided a private remedy. It then noted that "the issue was neither argued below nor raised before us." *Id.* at 171 n. 25. It decided not to address my conclusions about a private remedy but rather assumed I was correct *arguendo.*

The court took this step, I believe, because to have addressed this issue would have involved answering a question not presented to it and, moreover, it would have unnecessarily complicated the reasoning upon which the court believed the case was appropriately decided. Accordingly, footnote 25 can not be regarded as the basis for an assertion that the court ruled § 105 provided a private remedy. This conclusion when placed along side the case law submitted by Massport indicates that a private right of action does not exist for § 105. Massport's motion to dismiss this portion of plaintiff's complaint is therefore granted.

■ Massport next claims that § 307 of the Federal Aviation Act of 1958, 49 U.S.C. App. § 1348, does not provide a private right of action. It argues that the plain language of the statute indicates no congressional intent to create remedies for private parties. Moreover, Congress has expressly provided the exclusive remedy for any violation of the Act through 49 U.S.C.App. § 1487. Massport further argues that § 308 of the same Act, 49 U.S.C. App. § 1349, provides a persuasive analogy to § 307. It cites several cases which hold that there is no private remedy under § 308. Plaintiffs contend that the court in *NELF* upheld the existence of a private remedy because it construed this section in tandem with § 105. I believe the *NELF* court left this issue unresolved; therefore, since there is no case law directly on point, it is necessary to conduct a *de novo* review of § 307 to determine whether a private action is contemplated.

The United States Supreme Court set forth the test to determine whether a federal statute created a private right of action in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court outlined four factors which should be considered when making such a determination:

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted' ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted); *see also Nashoba Communications Limited Partnership No. 7 v. Town of Danvers,* 893 F.2d 435, 439 (1st Cir.1990).

The rock upon which plaintiffs' claim must founder is legislative intent. The legislative history of § 307, as articulated in 1958 U.S.Code Cong. & Ad.News 3741, 3753–55 indicates that the purpose of the section is to set forth the general powers of what later became the Secretary of the DOT. There is nothing in the original language or any of the subsequent changes,[6]

---

**6.** None of which are relevant to the issues presented here.

suggesting that the statute contemplates private remedies. Indeed, the history addresses disputes only between the Secretary and other agencies. Accordingly, I conclude that § 307 does not accord plaintiffs a private right of action. I note for the sake of completeness that plaintiffs were not the intended beneficiaries of the statute;[7] moreover, I do not believe that it is consistent with the legislative scheme as expressed not only through § 307 but through all the statutes at issue in this case to imply a private remedy. Additionally, the court in *NELF* affirmed the Secretary's ruling that § 307 preempted local legislation, which indicates that this is not an action "traditionally relegated to state law." *NELF*, 883 F.2d at 175. In sum, Massport's motion to dismiss plaintiff' complaint on the grounds that the aviation statutes do not provide private causes of action is granted.

In their complaint, plaintiffs allege that the aviation statutes provide a federal right enforceable under 42 U.S.C. § 1983. Massport argues that § 1983 does not extend to these statutes. It contends that this exact issue was decided in its favor by the court in *NELF*. Accordingly, "the doctrine of *stare decisis* counsels the same result here." Plaintiffs argue that *NELF* did not directly decide the § 1983 issue. More importantly, they argue, the Supreme Court's decision in *Golden State Transport Corp. v. Los Angeles*, 493 U.S. ——, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), which was decided after *NELF*, provides a persuasive and favorable analogy to this case. There, they claim, in circumstances remarkably similar to this case, the Court found an enforceable federal right.

■ Section 1983 provides a cause of action for the deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States. *Wilder v. Virginia Hospital Association*, —— U.S. ——, ——, 110 S.Ct. 2510, 2516–17, 110 L.Ed.2d 455 (1990). Violations of both the federal constitution and federal statutes are redressable under § 1983. *Id.*

at 2517. There are two recognized exceptions to this general rule.

A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless 1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or 2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.'

*Id.* at 2517 (quoting *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

■ The inquiry into whether a federal statute creates an enforceable right turns on whether the provision in question is intended to benefit the putative plaintiff. *Virginia Hospital*, 110 S.Ct. at 2517. If so, the provision creates an enforceable right unless it reflects merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the governmental unit. *Id.* at 2517 (citing *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)). An enforceable right is also created unless the interest plaintiff asserts is too vague and amorphous such that it is beyond the competence of the judiciary to enforce. *Virginia Hospital*, 110 S.Ct. at 2517 (quoting *Golden State Transport*, 110 S.Ct. at 449).

As to the foreclosure of § 1983 by express congressional mandate, the Supreme Court has stated:

We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right.... The burden is on the State to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.... In the absence of such an express provision, we have found private enforcement foreclosed only when the statute itself creates a remedial scheme that is sufficiently comprehensive.... to demonstrate Congressional intent to preclude the remedy of suits under § 1983.

---

7. As will be explained more fully below.

*Virginia Hospital,* 110 S.Ct. at 2523 (citations omitted).

With the foregoing in mind, I now address Massport's claims that the aviation statutes do not create rights enforceable under § 1983. Massport argues that plaintiffs' § 1983 claims are identical to those presented in the earlier proceedings; since the First Circuit rejected these claims in *NELF,* principles of *stare decisis* necessitate dismissal here. I believe that Massport reads plaintiffs' complaint too broadly. The claims presented in this action, while arising from the same operative facts, are sufficiently distinct from earlier claims to avoid preclusion.[8] However, I believe that *NELF,* as well as *New York Airlines,* have a direct bearing on this action.

■ As stated, the *NELF* court held that § 511 did not provide a private cause of action. In reaching this conclusion, the court relied, in part, on *Rocky Mountain Airways, Inc. v. County of Pitkin,* 674 F.Supp. 312 (D.Colo.1987). The court summarized the holding of this case as "airline has no private cause of action against county under 42 U.S.C. § 1983 for county's alleged violation of § 511." *NELF,* 883 F.2d at 169. The court also closed its opinion by stating "[t]he decision of the district court is *affirmed* in dismissing those parts of the actions that are based on 49 U.S.C.App. § 2210 and 42 U.S.C. § 1983." *Id.* at 176. I am, of course, mindful that this sparse holding is in conflict with the judgment in *New York Airlines,* which held that § 511 did provide an enforceable federal right. 623 F.Supp. at 1446–47. However, I must assume that the Court of Appeals was aware of the impact of its decision. Moreover, it is within that court's exclusive province to address any inconsistencies or conflicts which may exist. Accordingly, I hold that § 511, 49 U.S.C.App. § 2210, does not provide a federal right enforceable under § 1983.

■ Turning to § 105, the *NELF* court affirmed the Secretary's decision that Massport's landing fee scheme violated the statute. *NELF,* 883 F.2d at 173. However, it reversed my decision to dismiss all claims brought pursuant to § 105, including those predicated upon § 1983. Thus, nothing in that case bars consideration of plaintiffs' claim here. That said, plaintiffs' claim must nevertheless be dismissed. This court has held that "[t]here is no indication in the legislative history of this provision that congress intended section 105(a) to give rise to a federal right." *New York Airlines,* 623 F.Supp. at 1449. Since the reasoning underlying this conclusion is thoughtfully set forth in that opinion, I see no utility in repeating it here. I conclude that § 105, 49 U.S.C.App. § 1305, provides no federal right enforceable under § 1983. Massport's motion to dismiss this claim is granted.

■ Plaintiffs also allege that § 307 creates an enforceable federal right. Unlike the provisions already discussed, there is no case law discussing whether § 307 creates such a right. It is therefore necessary to apply the principles discussed in *Virginia Hospital* to this section. At the outset, it is helpful to understand that an inquiry into the existence of federal rights enforceable under § 1983 is quite similar to a determination that a statute provides a private right of action "since in each instance a party must demonstrate the existence of a federal right which may be judicially enforced." *New York Airlines,* 623 F.Supp. at 1444 (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 376–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982)). The primary difference, such as it is, appears to be that in order to establish a private right of action under a federal statute, a plaintiff must demonstrate a congressional intent to provide for private enforcement. *New York Airlines, supra,* at 1444.

As stated previously, the primary focus in a federal rights inquiry is whether "the provision in question is intended to benefit the putative plaintiff." *Virginia Hospital,* 110 S.Ct. at 2517 (citations omitted). Hav-

---

**8.** I believe that by not actually proffering a res judicata defense, Massport implicitly acknowledges this fact.

ing read § 307 and its legislative history in their entirety, I conclude that plaintiffs are not the intended beneficiaries of this statute. The general purpose of the provision is to demarcate the Secretary's authority over issues of national airspace and airport facilities. Subsection (a), for example, provides, in part, the "Secretary of Transportation is authorized and directed to develop plans for and formulate policy with respect to the use of the navigable airspace...." Subsection (b) provides, in part, that the Secretary is authorized to "acquire, establish and improve air-navigation facilities...." Subsection (c) provides that the Secretary is "authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft." These examples, of the many available in § 307, make it clear that whatever benefits plaintiffs derive from the statute are incidental and come only as members of the general public, not specifically as air carriers. I conclude, therefore, that because § 307 was not intended to benefit the plaintiffs but was, instead, aimed at establishing the duties and powers of the Secretary, that no federal right enforceable through § 1983 exists. Accordingly, Massport's motion to dismiss this claim must be granted.

■ Plaintiffs' reliance on *Golden State Transport* is inapt. Whether a statute contains an enforceable federal right depends very much on the terms of the particular statute itself. The principles with which the Court reached its conclusion about enforceable federal rights in *Golden State Transport* are not in question. Indeed, they were reaffirmed in *Virginia Hospital*. Their application to the specific statutes is what is at issue in this case. To compare the aviation statutes to the National Labor Relations Act is similar to comparing apples to oranges. Since, in that case, the "nub of the controversy between the parties is whether the NLRA creates 'rights' in labor and management that are protected against government interference," *Golden State Transport*, 110

S.Ct. at 449, I can see nothing in *Golden State Transport* which aids the instant inquiry.

■ Plaintiffs have also alleged that the implementation of the new landing fee plan violated their constitutional rights under the Due Process Clause of the Fourteenth Amendment.[9] Massport argues that the plaintiffs' § 1983 claims have been foreclosed by *NELF* and that no implied right of action exists under the Fourteenth Amendment. The specifics of the former argument have already been discussed. Massport supports the latter claim by stating that the new fee structure was adopted in accordance with the Massachusetts Open Meeting Law, Mass.Gen.Laws c. 30A, § 11A½ and the Massachusetts Administrative Procedure Act, Mass.Gen.Laws c. 30A, § 14. "Thus, it is clear the fees were implemented only after [use of] extensive, open and fair procedural safeguards. There can be no procedural due process violation in these circumstances." It further argues that there has been no taking of property without just compensation and that whatever harm plaintiffs may have suffered—although it claims they have suffered none—is simply not redressable under the Constitution. Plaintiffs respond that the recent Supreme Court decision in *McKesson Corp. v. Florida Division of Alcoholic Beverages and Tobacco*, — U.S. ——, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) refutes Massport's assertions and provides them a valid cause of action.

■ I believe that Massport has once again read plaintiffs' claim too broadly. All they seek is a refund of monies wrongfully exacted from them. This issue, to the extent it even reached the Court of Appeals, was expressly left unanswered in *NELF*.

In view of our rulings above, and in keeping with longstanding precedent that requires us to avoid ruling on constitutional issues when non-constitutional grounds are dispositive, we shall not

---

9. The Supremacy Clause is not the source of any enforceable federal rights. It simply secures federal rights by according them priority whenever they come into conflict with state law.

*Golden State Transport*, 110 S.Ct. at 449; *New York Airlines*, 623 F.Supp. at 1449. Consequently, the only constitutional claim I need decide relates to the Due Process Clause.

pass upon the questions raised dealing with alleged independent violations of the Interstate Commerce Clause and the Equal Protection and Due Process Clauses.

*NELF*, 883 F.2d at 176. Clearly, plaintiffs are not precluded by *NELF* from bringing an action based upon an alleged violation of a constitutional right.[10]

 I am persuaded that *McKesson* provides plaintiffs a cause of action under the Fourteenth Amendment.[11] In that case, the plaintiff, a wholesale liquor distributor, brought suit in Florida state court challenging a tax scheme implemented by respondents on the grounds that it unconstitutionally discriminated against interstate commerce. McKesson was not provided an opportunity to challenge the validity of the tax prior to its implementation. It therefore paid the tax under protest. The Florida Supreme Court agreed with McKesson and enjoined the state from collecting the tax under that scheme. However, it refused to provide McKesson with a postdeprivation remedy to enable it to recover the taxes already paid. McKesson appealed to the United States Supreme Court which ruled that Florida's failure to provide postdeprivation relief violated McKesson's due process rights.

The Court reasoned that "[b]ecause exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause." *McKesson*, 110 S.Ct. at 2250. It acknowledged that while a procedural due process inquiry usually focuses on predeprivation process, it is well settled that in the context of tax measures, states need not provide predeprivation procedures. *Id.* at 2250.

However, where it is determined that an exaction of a tax violates federal law, and where no predeprivation procedure has been provided, the state is required to provide a postdeprivation remedy. *Id.* at 2251. The Court based this conclusion on the rulings in a series of cases decided earlier this century in which state actors had enacted and implemented tax schemes which violated constitutional or statutory law. In each of these cases, the Court held that the state's failure to provide the taxpayer an opportunity to recover monies already exacted pursuant to the invalid scheme was a deprivation of due process. *See, e.g., Atchison, T & S.F.R. Co. v. O'Connor,* 223 U.S. 280, 285–86, 32 S.Ct. 216, 217, 56 L.Ed. 436 (1912); *Ward v. Love County Board of Commissioners,* 253 U.S. 17, 24, 40 S.Ct. 419, 422, 64 L.Ed. 751 (1920); *Montana National Bank of Billings v. Yellowstone County,* 276 U.S. 499, 504–05, 48 S.Ct. 331, 333, 72 L.Ed. 673 (1928).

In *McKesson,* Florida did not provide predeprivation procedures. Rather, it established various sanctions and summary remedies designed so that liquor distributors rendered their tax payments before their objections to the tax were resolved. *Id.* at 2251.

> As a result, Florida does not purport to provide to taxpayers like petitioner with a meaningful opportunity to withhold payment and to obtain a predeprivation determination of the tax assessment's validity; rather, Florida requires taxpayers to raise their objections to the tax in a postdeprivation refund action. To satisfy the requirements of the Due Process Clause, therefore, in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy ... for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.

*see also Lessler v. Little,* 857 F.2d 866, 867 (1st Cir.1988).

---

10. Because plaintiffs are not otherwise precluded from bringing this constitutional claim, I conclude that I have subject matter jurisdiction. Massport's motion to dismiss this claim on 12(b)(1) grounds is denied. I now measure plaintiffs' claim against the well known standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957);

11. I need not decide whether § 1983 provides the exclusive remedy for claims arising from the Fourteenth Amendment; the provision clearly applies in this case.

*McKesson,* 110 S.Ct. at 2251 (citations omitted).

In the case at the bar, the landing fee scheme was enacted pursuant to the rule-making procedures under the Massachusetts Administrative Procedure Act, Mass. Gen.Laws c. 30A, § 14. Massport claims that plaintiffs took advantage of the opportunity to attend open hearings on the proposed fee schedule and that, therefore, they have received sufficient due process protection. However, Massport refused to delay implementation of the proposed fees pending an adjudication of their validity by the DOT, a proceeding sought by plaintiffs. Consequently, plaintiffs' ability to meaningfully challenge the validity of the new fees before their implementation was preempted by the deliberate action of Massport itself. The fees went into effect long before their validity had been finally adjudicated.

Being mindful that procedural due process is a flexible concept, *see Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), I conclude that plaintiffs did not receive adequate predeprivation procedures before implementation of the new fees. I further conclude that *McKesson* mandates that where challenges to the validity of an exaction plan have not yet run their full course a postdeprivation proceeding and remedy must be provided. Without such a requirement I believe the Government would have the unseemly power to exact fees and taxes without any obligation to return them irrespective of whether such exactions were legal or not. It should be remembered that plaintiffs are not challenging Massport's predeprivation procedures; rather, they are seeking a postdeprivation remedy for the money wrongfully taken. I conclude that the Due Process Clause provides such a remedy.[12]

Massport argues that *McKesson* only applies to deprivations which violate the Constitution. "Congress—and Congress alone—must establish the appropriate relief from any violation of a *statutory* provision." Massport's construction of *McKesson* is too narrow. The cases from which the Court derived its conclusion that postdeprivation remedies are constitutionally mandated involved violations of both constitutional and statutory law. *O'Connor,* for example, involved a tax exaction which violated the Commerce Clause. *Ward,* on the other hand, involved a tax plan which violated congressional enactments dealing with the lands of the Choctaw Indian tribe. While *McKesson* involved a violation of the Constitution, I do not believe that the Supreme Court recognizes a substantive distinction between constitutional and statutory violations in this context.[13]

Massport also argues that because it provided plaintiffs a meaningful opportunity to challenge the validity of the fees, their subsequent payment of them must be considered "voluntary". As a result, the facts of this case are different from *McKesson* and its forbearers because plaintiffs in those cases were under "duress" to pay the tax. It cites a footnote in *McKesson* to support its position.

> In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing, payments tendered may be deemed 'voluntary'. The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.

*McKesson,* 110 S.Ct. at 2251 n. 21.

This argument must fail for two reasons. First, it depends upon an assumption already proven to be unsound in this case, namely that plaintiffs received an adequate

---

**12.** The Supreme Court devoted a great deal of attention to the question of what sort of remedy Florida must provide to McKesson. I do not believe that I need to answer that question at this stage of this action.

**13.** Massport also seeks to draw a distinction between taxes and fees. However, it has provided nothing which establishes that there is a difference between the two in the constitutional sense, especially in this context.

opportunity to challenge the validity of the fees before they took effect. As stated, Massport's decision to implement the fees before their validity had been fully adjudicated preempted plaintiffs' opportunity to challenge the fees before they had to pay them.

Second, Massport ignores the Court's discussion in that same footnote about duress. I believe the language of the cases cited are applicable enough to this case to preclude a finding of voluntariness. As for Massport's contention that plaintiffs never protested imposition of the new fees, I find it incredible that the institution of not one but two legal actions is not considered protest. Again, what this case boils down to is a demand for the return of money to which, as it turns out, Massport had no legal right.

Having determined that a cause of action exists under the Fourteenth Amendment, I now address plaintiffs' allegations that they are entitled to bring this action as named plaintiffs for a class action. Fed.R. Civ.P. 23. Under Rule 23(a), plaintiffs must show that 1) the class is so numerous that joinder is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs allege that the class they presume to represent consists of all operators of fixed wing aircraft who paid fees for aircraft landings at Logan during the period July 1, 1988 to December 27, 1988. They further claim that the putative class contains "hundreds, perhaps thousands, of operators" who paid unlawfully imposed landing fees during this period. Consequently, joinder of all is impracticable.

In addition, plaintiffs allege that the principal common questions of law and fact affecting all class members is whether the Appeals Court's decision in *NELF* entitles the class members "to recover the additional fees paid to Massport in excess of fees previously in effect." Plaintiffs aver that the only factual question that differs among members of the class relates to damages. Plaintiffs next allege that their claims are typical of the rest of the class. Finally, they vow that they will fairly and adequately protect the interests of the class.

Under Rule 23, if a plaintiff has met these four criteria, it must then satisfy one of the several conditions set forth in Rule 23(b). Here, plaintiffs claim that the prosecution of separate actions by individual class members would create a risk of varying adjudications which would establish incompatible standards of conduct for Massport. They also claim that the class action device is superior to any other available method for the fair and efficient adjudication of this controversy.

Rule 23 urges courts to act on certification as soon as practicable. While Massport has not filed any objection to certification, I assume it will wish to express its views in light of my ruling on the instant action. It should file its response to certification promptly.

To summarize, Massport's motion to dismiss plaintiffs' claims that the aviation statutes provide them a private right of action to seek a refund of the fees they paid pursuant to an invalid fee plan is allowed. Massport's motion to dismiss plaintiffs' claims that the aviation statutes provide a federal right enforceable under 42 U.S.C. § 1983 to recover that same refund is also allowed. Massport's motion to dismiss plaintiffs' claim that the Due Process Clause of the Fourteenth Amendment provides them a cause of action to seek that same refund is denied.

SO ORDERED.